**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 95-5776

LACY DAVIS, III, a/k/a Lacy Davis,
3,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CR-94-411-A)

Argued: January 31, 1997

Decided: March 6, 1997

Before RUSSELL and WILKINS, Circuit Judges, and HERLONG,
United States District Judge for the District of South Carolina,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John Kenneth Zwerling, MOFFITT, ZWERLING &
KEMLER, P.C., Alexandria, Virginia, for appellant. Leslie Bonner
McClendon, Assistant United States Attorney, Alexandria, Virginia,
for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney,
Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Lacy Davis was convicted (after two jury trials) of conspiracy to possess with the intent to distribute "crack" cocaine in violation of 21 U.S.C. § 846. The district court sentenced Davis to 240 months imprisonment and 10 years of supervised release. Davis appeals, raising eight challenges to his conviction. Finding no error, we affirm the conviction.

I.

Defendant Davis was riding in a car with Cedric Williams in Virginia. Virginia state troopers pulled the car over because it was weaving. The driver, Williams, was given a field sobriety test, and eventually, Williams was arrested for driving under the influence. While Williams was being arrested, one of the troopers, Trooper Apfel, noticed that Davis was reaching under the driver's seat. Williams was ordered to step out of the car. The troopers then determined that Davis was also intoxicated and unable to drive the car home. After they ordered a tow truck to impound the car, Trooper Herman searched the car pursuant to an inventory search and found two bags containing over 500 grams of crack cocaine under the driver's seat. It was at this point that Trooper Herman arrested Davis.

Davis was transported to the Fauquier County Detention Center. One of the arresting troopers read Davis his Miranda[1] rights against self-incrimination. The trooper also asked Davis if he understood those rights. Davis indicated that he did. The trooper then asked Davis if, understanding his rights, he still wished to talk to the trooper. Davis responded that he did not want to talk to the trooper without his lawyer, but that he would be willing to "work with" the trooper.

_____

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Davis was searched, and a pager and some cash were found on his person. A pager was also found on Williams. Agent David Allen accessed the memories of the two pagers, noting down all of the numbers that had called the pagers. At trial, the agent stated that he transcribed the numbers from Davis's pager on one side of a piece of paper and the numbers for Williams's pager on the other side of the piece of paper.

Davis was indicted and tried for two counts: (1) conspiracy to possess with intent to distribute "crack" cocaine, 21 U.S.C. § 846, and (2) possession with intent to distribute "crack" cocaine, 21 U.S.C. § 841. The government relied principally on the testimony of Williams. The trial resulted in a hung jury, and on January 26, 1995, the district court declared a mistrial.

Prior to the second trial, the district court held a suppression hearing. The district court ruled to allow Davis's statements made before he received his Miranda warning while he was in the back of the police car being transported to the detention center. The district court also found that Davis's arrest was supported by probable cause. At the hearing, defense counsel was admonished that after having been granted two continuations already, the court would decline any further motions for continuance.

Subsequent to the suppression hearing and five days prior to the trial date, the government informed defense counsel of its plan to introduce the testimony of two new witnesses. Four days prior to trial, the government sent defense counsel a letter stating that it would also be calling three new expert witnesses. The letter did not reach defense counsel until one day prior to trial. On the morning of the trial, defense counsel made several motions to limit or exclude testimony that would extend the scope of the conspiracy beyond that alleged in the indictment. The district court ruled that witnesses and evidence would be limited to the time frame alleged in the indictment, but cautioned defense counsel to object to any improper expansion of that scope. The district court also denied the defense's motion for a continuance.

At the second trial, the government presented the testimony of Jamie Christmas, a longtime friend of Davis, who testified that Davis

was his source of drugs. Christmas described a conspiracy in which Davis, who lived in Maryland, frequently would transport "crack" cocaine to Christmas's home in Charlottesville, Virginia for distribution by Christmas and another individual, Kevin Johnson. Christmas stated that he received "crack" cocaine from Davis four or five times during the period alleged in the indictment. The"crack" cocaine was usually divided into two equal portions, one for Christmas and one for Johnson. With respect to the night that Davis was arrested, Christmas testified that he had been in touch with Davis several times and that Davis told Christmas that he was on the way to Charlottesville. The government presented evidence that one of the pagers contained Christmas's telephone number in its memory.

Christmas also testified that Davis owned a Ford Taurus station wagon that was equipped with a secret compartment in which Davis stored drugs and cash. To corroborate this testimony, the government introduced the testimony of Virginia Detective Doug Comfort who stated that money had been found in a secret compartment of Davis's Ford Taurus. The money was arranged in a "dealer fold," a manner of arranging money that made it easy to determine the amount without actual counting, and the secret compartment was lined with dryer sheets, a practice common in the drug trade that dealers believe will confuse narcotics-sniffing dogs.

The jury convicted Davis of the conspiracy count but deadlocked as to the substantive charge.

II.

Davis alleges that the district court erred as follows: in allowing testimony regarding post-Miranda statements by Davis, in finding that Davis's arrest was supported by probable cause, in denying his motion for a continuance, in improperly limiting Davis's cross-examination of two witnesses, and in improperly allowing hearsay evidence. Davis further claims that the government committed a Brady[2] violation, knowingly used false testimony, and engaged in misconduct during closing argument.

_____

2 **Brady v. Maryland**, 373 U.S. 83 (1963).

4

III.

Davis contends that the district court erred in determining that his arrest was supported by probable cause. The district court's determination that the totality of the circumstances gave rise to probable cause is reviewed de novo, but the underlying factual findings are reviewed for clear error. United States v. Williams, 10 F.3d 1070, 1074 (4th Cir. 1993). Davis was arrested after the trooper discovered 500 grams of "crack" cocaine under the driver's seat. This location was the same spot in which he had observed Davis rummaging around. Viewing the facts surrounding his arrest in the light most favorable to the government, we find that the district court correctly concluded that Davis's arrest was supported by probable cause.

Davis claims that the district court erred in denying defense counsel's third motion for a continuance. A district court's denial of a motion for continuance is viewed under the abuse of discretion standard. United States v. Moore, 27 F.3d 969, 973 (4th Cir.), cert. denied, 115 S. Ct. 459 (1994). In providing defense counsel with the names of the new witnesses, the government also related the substance of their testimony and turned over their arrest records, plea agreements, and related documents. Defense counsel used this information to impeach the witnesses on cross-examination. Nothing in the record suggests that Davis's defense was hindered in any way by the district court's denial of the motion for a continuance. Consequently, we find that the district court did not abuse its discretion in denying the motion for a continuance.

Davis asserts that the district court improperly allowed a post-Miranda statement into evidence in violation of Doyle v. Ohio, 426 U.S. 610 (1976). In Williams v. Zahradnick, 632 F.2d 353 (4th Cir. 1980), this court considered the following factors in evaluating a Doyle violation: (1) how the prosecution used the defendants silence; (2) who opened the line of questioning; (3) the quantum of other evidence of guilt; (4) the intensity and frequency of the references; and (5) whether the trial court issued curative instructions. Id. at 361-62. At trial, there was other substantial evidence of guilt, there was only one reference to the post-Miranda statement, and the district court issued curative and limiting instructions when it charged the jury. As

5

such, we find that the district court did not commit reversible error in allowing the post-Miranda statement into evidence.

Davis claims that, at trial, the district court erred in limiting defense counsel's cross-examination of two government witnesses, Jamie Christmas and Anthony Smith. The district court refused to allow defense counsel to question Smith regarding a recent arrest. The district court also refused to allow defense counsel to question Christmas about his pending drug charge, his drug supplier, and the remarks discrediting him as a witness in another prosecution. "[T]rial judges retain wide latitude [under] the Confrontation Clause . . . to impose reasonable limits on such cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). In this case, defense counsel was given ample opportunity to impeach both Smith and Christmas on numerous issues. Exclusion of some impeachment evidence may amount to harmless error. Id. at 681. We conclude that the district courts limiting of defense counsel's cross-examination of Smith and Davis does not rise to the level of reversible error.

Davis maintains that the district court erred in allowing hearsay statements by a co-conspirator into evidence. During trial, the government presented Paula Washington who was a "crack" cocaine user from Charlottesville, Virginia. In essence, she testified that her dealer, Chuck Johnson, told her there was no "crack" cocaine available because Davis and Williams had been arrested. Federal Rule of Evidence 801(d)(2)(E) allows into evidence hearsay statements made in furtherance of a conspiracy by a co-conspirator. At the time of Washington's testimony there was ample evidence that Johnson was a co-conspirator, and the statement that there was no "crack" cocaine today implied that there might be some available in the future. Thus, this statement furthered the conspiracy and was properly admitted.

IV.

Davis also asserts certain misconduct on behalf of the government. First, Davis claims that the government committed a Brady violation when it failed to inform defense counsel that Christmas had been withdrawn as a witness in another case because an Assistant United

6

States Attorney perceived him to have credibility problems. Under Brady v. Maryland, 373 U.S. 83 (1963), the prosecution must reveal or turn over to the defense exculpatory evidence and evidence that could be used to impeach a witness. There is no duty, however, to disclose exculpatory evidence that could have been discovered through the exercise of due diligence by the defendant. United States v. Wilson, 901 F.2d 378, 380 (4th Cir. 1990). Prior to trial, the government turned over to defense counsel Christmas's plea agreement, letter of immunity, and criminal history and informed defense counsel that Christmas had been arrested again while his sentencing was pending. The plea agreement listed the criminal number and the district where Christmas's most recent case was pending. Through the exercise of due diligence, defense counsel could have discovered the sentencing transcript that contained the alleged Brady comments.

Even if the government should have disclosed this information, suppression of evidence favorable to an accused violates due process only where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady, 373 U.S. at 87. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). A "reasonable probability" of a different result exists "when the Government's evidentiary suppression `undermines confidence in the outcome of the trial.'" Kyles v. Whitley, 115 S. Ct. 1555, 1566 (1995) (quoting Bagley, 473 U.S. at 678). In this legal context, we find that it is clear that the government did not commit a Brady violation.

Davis next contends that the government knowingly allowed Investigator David Allen to testify that certain phone numbers, including Christmas's, were recorded from a pager belonging to Davis, when in fact Allen did not know which pager belonged to Davis or even from which pager the numbers had come. This argument is without merit. First, Allen only testified that he recorded the numbers from the two pagers; he did not assert that he knew which pager belonged to Davis. Second, Allen acknowledged on cross-examination that he did not know which pager was which and that he did not know who owned each pager. In any event, defense counsel never raised this issue at trial, and as such, the issue is forfeited on appeal unless it constitutes

7

plain error. <u>United States v. Wilkerson</u>, 84 F.3d 692, 694 (4th Cir. 1996). We find that this issue does not constitute plain error and is, therefore, waived.

Finally, Davis challenges several of the government's comments in closing arguments. He attacks six different arguments of the government, charging that the arguments (1) bolstered and vouched for various witnesses' testimony and credibility; (2) appealed to community interests and prevention of future crimes; and (3) incorrectly defined reasonable doubt. The government argues that it was simply responding to defense counsel's own argument.

The "invited response" doctrine states that a court of appeals must consider whether "prosecutors have responded reasonably in closing argument to defense counsel's attacks." <u>Young v. United States</u>, 470 U.S. 1, 12 (1985). We find that each of the challenged comments was a direct response to arguments made by defense counsel. As for the government's characterization of reasonable doubt, any error in the government's statements was cured by the jury instructions given by the district court.

V.

For the foregoing reasons, Davis's conviction is affirmed.

<u>AFFIRMED</u>

8