Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★ ★ ★  ★ ★ ★

# OPINION

No. 04-09-00315-CR

Regino **PALACIOS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 156th Judicial District Court, McMullen County, Texas
Trial Court No. M-08-0011-CR-B
Honorable Michael Everett Welborn, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed: April 14, 2010

AFFIRMED

Regino Palacios appeals the denial of his motion to suppress. We affirm.

## BACKGROUND

Palacios was charged with possession of marijuana in an amount greater than five pounds

and less than fifty pounds. He filed a motion to suppress, arguing that because the officer did not

have reasonable suspicion to stop the van Palacios was driving, Palacios was illegally stopped in

violation of the Fourth Amendment to the Constitution. Palacios's motion to suppress was not heard as a pretrial matter, but was instead heard at the same time as a trial on the merits before the bench.

At trial, Chief Deputy Sheriff William Ainsworth of the McMullen County Sheriff's Department testified about stopping Palacios's van for a traffic violation. According to Deputy Ainsworth, on August 23, 2008, at 7:30 p.m., although it was not yet dark, it had been raining and was cloudy. Deputy Ainsworth testified that he was pulling onto Highway 16 when he saw a black and silver van pass. According to Deputy Ainsworth, when the vehicle passed, he "saw the lights were on [but] there was no license plate light." So, he pulled the van over for not having a light illuminating the license plate. When the van stopped, Regino Palacios immediately got out of the van and approached Deputy Ainsworth's patrol car. Deputy Ainsworth then showed Palacios that his license plate light was not working. Deputy Ainsworth began questioning Palacios and determined that Palacios did not have a driver's license – only an expired identification card from Illinois – and that the van was registered in Laredo, Texas. Deputy Ainsworth asked Palacios where he was going. Palacios replied that he was going to San Antonio. Deputy Ainsworth asked why Palacios was on Highway 16 if he was traveling to San Antonio from Laredo. According to Deputy Ainsworth, Palacios claimed that he had first traveled to Banquete to visit a friend, and then decided to go to San Antonio. Deputy Ainsworth then asked the passenger of the van separately if Palacios had asked the passenger "to go riding with him." The passenger replied that Palacios had asked him to accompany Palacios on a trip to Houston, but that when they got to Freer, they decided to go to San Antonio. Having received two different stories, Deputy Ainsworth became suspicious. He asked the passenger if he had a driver's license. However, all the passenger could produce was a Texas identification card. At that point, because neither Palacios nor the passenger had a valid

driver's license, and neither could produce proof of insurance for the van, Deputy Ainsworth told them that the van was going to be impounded. Deputy Ainsworth testified that he regularly impounds vehicles when a driver does not have a valid driver's license. Further, here, because the passenger did not have a valid driver's license either, Deputy Ainsworth testified that he could not give control of the van to the passenger.

Deputy Ainsworth then called State Trooper Clint Walker for help:

> I felt like there was something in the van. I had gone up, and I thought it was going to be full of illegals because it's common practice coming through here. And when I visually looked in the van, I saw no one hiding in the back. So, there was only one other alternative. Due to the actions of the driver, I felt like there would be contraband in the van.

Deputy Ainsworth explained that the driver's demeanor was not normal:

> First off, when you get stopped on a traffic stop, very few people will immediately exit their vehicle because they know they are supposed to stay in it. And, you can see in the video . . . where he immediately got out of his vehicle and met me as if he didn't want me to look in his vehicle.

Deputy Ainsworth also questioned Palacios's out-of-the-way route to San Antonio from Laredo and the differences between Palacios's and his passenger's stories.

When Trooper Walker arrived, he asked Deputy Ainsworth if he could talk to Palacios.

Deputy Ainsworth agreed. At trial, Trooper Walker testified that Palacios was acting very nervous:

> [Palacios] was doing what we call grooming – grooming his hair, running his fingers through his hair repeatedly. He was pacing back and forth, was stuttering, and then several responses to [] questions just led me to believe that, you know, the manner in which he gave his responses indicated nervousness on his part.

Like Deputy Ainsworth, Trooper Walker asked Palacios and the passenger separately about their trip. And, as with Deputy Ainsworth, Palacios and the passenger gave different explanations. Trooper Walker asked Palacios if he had brought any clothes with him for his trip. Palacios said that the

suitcase in the van contained his clothing. Trooper Walker thought it odd that there was only one suitcase – the passenger evidently did not bring any belongings for the trip. Indeed, the passenger told Trooper Walker that he had not brought any clothing, not even a toothbrush, for the trip.

Trooper Walker was then told by Deputy Ainsworth that because neither the driver nor the passenger had a valid driver's license, he was going to impound the car and asked Trooper Walker to inventory the van's contents. Trooper Walker testified that upon opening the driver's door to the van, he smelled a strong odor of fabric softener. He picked up a large suitcase, which was sitting upright between the second row of seats. Because the suitcase was soft-sided, Trooper Walker could tell that it was not full. However, when he picked up the suitcase, it was much heavier than he expected a half-full suitcase full of clothes to be. In the suitcase, he found five bundles of marijuana wrapped in sheets of fabric softener, some clothes, and some probation papers belonging to Palacios. Palacios and the passenger were then arrested.

Palacios also testified at trial. He claimed that he did not realize the suitcase contained marijuana – he thought he was transporting "hemp for medical treatment" for an herbalist who was helping him with his arthritis. Palacios testified that he checked the van before leaving Laredo, and the license plate lights were working. According to Palacios, Deputy Ainsworth punched one of the light bulbs over the license plate causing it to break. When asked on cross examination whether his headlights were on at the time he was pulled over, Palacios claimed that "only the parking lights" were on.

At the end of trial, Palacios's motion to suppress was denied, and he was found guilty. He was then sentenced to twenty-five years of imprisonment.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Wilson v. State*, No. PD-0307-09, 2010 WL 715253, at *3 (Tex. Crim. App. Mar. 3, 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Although we give almost total deference to the trial court's determination of historical facts, we conduct a de novo review of the trial court's application of the law to those facts. *Wilson*, 2010 WL 715253, at *3; *Carmouche*, 10 S.W.3d at 327. And, as the sole trier of fact during a suppression hearing, the trial court may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *see also Wilson*, 2010 WL 715253, at *3. Furthermore, we examine the evidence in the light most favorable to the trial court's ruling. *Wilson*, 2010 WL 715253, at *3; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). However, a trial court necessarily abuses its discretion if it refuses to suppress evidence that is obtained in violation of the law and that is, therefore, inadmissible under article 38.23 of the Texas Code of Criminal Procedure. *Wilson*, 2010 WL 715253, at *3; *Erdman v. State*, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993).

## DISCUSSION

In his first issue, Palacios argues that the trial court erred in denying his motion to suppress because Deputy Ainsworth did not have reasonable suspicion to pull over Palacios's van based on an alleged defective license plate light. According to Palacios, because it was still daylight and one has no legal duty to have his license plate illuminated by a light during daylight, Deputy Ainsworth did not have reasonable suspicion to stop the van. The State responds that Palacios has failed to preserve this issue for appeal because, during trial, when the "fruits" of the alleged illegal search and

seizure were admitted in evidence, Palacios stated that he had "no objection." *See* Tex. R. App. P. 33.1(a).

Because the trial court did not rule on Palacios's motion to suppress as a pretrial matter, but instead carried the motion along with the trial, in order to preserve error Palacios was required to object each time any refuted evidence was offered. *See Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); *Garza v. State*, No. 04-01-00358-CR, 2002 WL 985460, at *1 (Tex. App.—San Antonio 2002, no pet.) (not designated for publication). Palacios not only failed to timely object to the admission of the suitcase and its contents, he affirmatively stated that he had no objection. *See Swain v. State*, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005); *Jones v. State*, 833 S.W.2d 118, 126 (Tex. Crim. App. 1992). Palacios's affirmative acceptance of this evidence waived any error in its admission. *See Swain*, 181 S.W.3d at 368; *Jones*, 833 S.W.2d at 126.

Moreover, even if Palacios had properly preserved this issue for review, we conclude Palacios's first issue lacks merit. Subsection 547.322(f) of the Texas Transportation Code requires "[a] taillamp or a separate lamp" to be "constructed and mounted to emit a white light that: (1) illuminates the rear license plate; and (2) makes the plate clearly legible at a distance of 50 feet from the rear." Tex. Transp. Code Ann. § 547.322(f) (Vernon 1999). Subsection 547.322(g) further states that "[a] taillamp, including a separate lamp used to illuminate a rear license plate, must emit a light when a headlamp or auxiliary driving lamp is lighted." *Id.* § 547.322(g). Thus, if a vehicle's headlamp or auxiliary driving lamp is lighted, then the rear license plate must also be illuminated.

Here, because the van's headlamps or auxiliary driving lamps were on at the time of the stop,[1] subsection 547.322(g) required that its rear license plate be illuminated.

Palacios argues that section 547.302 of the Transportation Code should control. Pursuant to subsection 547.302(a), "[a] vehicle shall display each lighted lamp and illuminating device required by this chapter to be on the vehicle: (1) at nighttime; and (2) when light is insufficient or atmospheric conditions are unfavorable so that a person or vehicle on the highway is not clearly discernible at a distance of 1,000 feet ahead." TEX. TRANSP. CODE ANN. § 547.302(a) (Vernon 1999). According to Palacios, pursuant to subsection 547.302(a), because it was still daylight at the time of the stop, he had no duty to have his lights on. And, because he did not have a duty to have his lights on, Palacios argues he did not violate subsection 547.322(g) by not having a functioning rear license plate light. We disagree.

While Palacios may not have had a duty to have the lights on his van turned on, because the lights on his van were in fact turned on, subsection 547.322(g) required that the van's rear license plate also be illuminated. Subsection 547.322(g) clearly states that a "taillamp, including a separate lamp used to illuminate a rear license plate, must emit a light *when a headlamp or auxiliary driving lamp is lighted.*" TEX. TRANSP. CODE ANN. § 547.322(g) (Vernon 1999) (emphasis added).

---

[1] We note that Palacios makes much of Deputy Ainsworth's testimony that the van's "lights were on." Palacios argues that because Deputy Ainsworth did not specifically testify that the van's headlights were on, we must take as true Palacios's testimony that only his "parking lights" were turned on at the time of the stop. However, a trial court may disbelieve a witness's testimony, even if that testimony is not controverted. *Ross*, 32 S.W.3d at 855. Further, whether the van's headlights or "parking lights" were on is not determinative in this case as subsection 547.322(g) requires the rear license plate light to be illuminated whenever a headlamp or *auxiliary driving lamp* is lighted. TEX. TRANSP. CODE ANN. § 547.322(g) (Vernon 1999) (emphasis added); *see also* 37 TEX. ADMIN. CODE § 21.1(a)-(b) (2010) (Tex. Dep't of Public Safety, Standards for Vehicle Equipment) (explaining that the standards of the Texas Department of Public Safety "duplicate those of the of the United States that apply to the same aspect of vehicle equipment" and that terms defined in the Federal Motor Vehicle Standards, as adopted in 49 C.F.R. Part 571, apply); *see also* 49 C.F.R. § 571.108, S5.5.7 (2010) (requiring that when the parking lamps are activated on passenger cars, motorcycles, or multipurpose passenger vehicles, trucks, and buses of less than 80 inches overall width, "the taillamps, license plate lamps, and side marker lamps shall also be activated").

Nowhere does subsection 547.322(g) state that a rear license plate need only be illuminated when the driver has a duty to display the lights on his vehicle.

Therefore, because the van's rear license plate was not illuminated when the van's lights were on, Palacios was violating subsection 547.322(g), and Deputy Ainsworth, seeing that the rear license plate was not illuminated, had probable cause to stop the van for a traffic violation. *See Moreno v. State*, 124 S.W.3d 339, 346 (Tex. App.—Corpus Christi 2003, no pet.) ("A peace officer's decision to stop an automobile is reasonable under the Fourth Amendment when the officer has probable cause to believe the driver committed a traffic offense. An officer's observation of an actual violation of the traffic laws gives probable cause for a traffic stop."); *United States v. Alexander*, 589 F. Supp. 2d 777, 783 (E.D. Tex. 2008) (holding that the officer had probable cause to stop the driver when the officer observed the absence of a functional license plate light on the rear of the driver's vehicle); *see also United States v. Cole*, 444 F.3d 688, 689 (5th Cir. 2006) ("The rule established by the Supreme Court in *Whren* [*v. United States*, 517 U.S. 806 (1996),] allows officers to justify a stop by the occurrence of a traffic violation even though this is not the real reason for the stop."); *see also* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 2005) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."); TEX. TRANSP. CODE ANN. § 543.001 (Vernon 1999) ("Any peace officer may arrest without warrant a person found committing a violation of this subtitle."). We, therefore, overrule Palacios's first issue.

In his second and third issues, Palacios argues that the officers violated his rights under the Fourth Amendment in conducting an inventory search. These issues, however, are not preserved for appellate review. As discussed previously, Palacios's affirmative acceptance of the suitcase and its contents in evidence waived any error he may have with respect to their admission in evidence. *See*

*Swain*, 181 S.W.3d at 368; *Jones*, 833 S.W.2d at 126. And, even if he had objected to this evidence during trial, Palacios failed to argue in his motion to suppress or during trial that the officers improperly impounded the vehicle or improperly conducted an inventory search. Therefore, Palacios has failed to preserve his second and third issues for appeal. *See Swain*, 181 S.W.3d at 365.

In his final issue, Palacios argues that if we hold his second and third issues were waived, then he received ineffective assistance of counsel because his counsel failed to move to suppress evidence obtained as a result of an unconstitutional inventory search. We disagree. Even if Palacios's trial counsel had moved to suppress evidence as a result an allegedly improper impoundment and inventory search of the van, Palacios's rights under the Fourth Amendment were not violated. The officers first had the right to enter the van due to a lawful impoundment and then upon entering the van, had probable cause to open the suitcase due to the intense odor of fabric softener, the nervous behavior of the driver, and the conflicting stories given by the driver and passenger. Thus, because Palacios's rights under the Fourth Amendment were not violated, Palacios cannot prove that his counsel's failure to object prejudiced him. *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (explaining that the second prong of the *Strickland* test requires an appellant to affirmatively prove prejudice – that is, the appellant must show a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different).

Impoundment of a car may be lawful under many circumstances. *Lagaite v. State*, 995 S.W.2d 860, 865 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). For example, reasonable cause for impoundment exists under the following scenarios: (1) when the vehicle has been used in the commission of a crime; (2) when an unattended vehicle is abandoned, illegally parked, or otherwise

endangering other traffic; (3) when the driver is incapacitated and unable to remove the vehicle; and (4) when the driver is removed from his automobile, placed under custodial arrest, and his property cannot be protected by any means other than impoundment. *Id.* Likewise, here, the van was lawfully impounded. When Deputy Ainsworth determined that neither Palacios nor the passenger had a valid driver's license and that neither could produce insurance for the vehicle, Deputy Ainsworth had the legal authority to impound the vehicle and direct Trooper Walker to inventory its contents. *See Stephen v. State*, 677 S.W.2d 42, 43-44 (Tex. Crim. App. 1984) (holding that officer properly impounded car where driver had been arrested and "the only alternative available was to let appellant's passenger take possession of the car," but the passenger was unable to produce a driver's license); *Benavides v. State*, 600 S.W.2d 809, 811 (Tex. Crim. App. 1980) (explaining that an automobile may be impounded where driver is placed under arrest and "no other alternatives are available other than impoundment to insure the protection of the vehicle"); *see also Garza v. State*, 137 S.W.3d 878, 882 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) ("We note that peace officers need not independently investigate possible alternatives to impoundment absent some objectively demonstrable evidence that alternatives did, in fact, exist."). Thus, because the van was lawfully impounded, Trooper Walker had the right to enter the van to begin conducting an inventory of its contents. *See South Dakota v. Opperman*, 428 U.S. 364, 375-76 (1976).

However, upon entering the van to begin conducting an inventory of its contents, Trooper Walker immediately detected a "strong odor" of fabric softener, which he testified is a "known cover

odor to mask odors of illegal drugs."[2]  The Supreme Court has recently reiterated that "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity," officers may without a warrant search "any area of the vehicle in which the evidence might be found." *Arizona v. Gant*, 129 S. Ct. 1710, 1721 (2009) (citing *United States v. Ross*, 456 U.S. 798, 820-21 (1982)).  To prove the applicability of this exception to the warrant requirement, the State "must demonstrate that law enforcement officers had a belief, reasonably arising out of circumstances known to the seizing officer, that the vehicle contained that which by law is subject to seizure." *United States v. Bucci*, 582 F.3d 108, 117 (1st Cir. 2009).  "Whether a particular set of facts arises to the level of probable cause is a legal determination" that the appellate court reviews de novo. *Id.*  Here, the strong odor of fabric softener that Trooper Walker detected upon entering the van, coupled with Palacios's nervous demeanor, and the inconsistent stories from Palacios and the passenger, gave Trooper Walker probable cause to search the suitcase for illegal drugs.  *See United States v. Quiroz-Hernandez*, 48 F.3d 858, 864 (5th Cir. 1995).  Therefore, Palacios's suitcase was not searched in violation of his rights under the Fourth Amendment.[3]  Because his constitutional rights were not violated, Palacios was not prejudiced by his trial court's failure to preserve his second and third issues on appeal. *See Thompson*, 9 S.W.3d at 812.

---

[2] The use of fabric softener to mask the odor of illegal drugs is well-documented in decisions. *See, e.g., United States v. $129,727.00*, 129 F.3d 486, 491 (9th Cir. 1997) ("The nexus between fabric softener and drug trafficking is recognized to be of great probative value."); *United States v. Davis*, 107 F.3d 868, 1997 WL 100919, at *2 (4th Cir. 1997) (explaining that it is common practice in drug trade to line a secret compartment with dryer sheets to confuse narcotics-sniffing dogs); *United States v. Mendez*, 102 F.3d 126, 127 (5th Cir. 1996) (noting that cocaine was found packaged in fabric softener and coffee grounds); *United States v. $39,873.00*, 80 F.3d 317, 319 (8th Cir. 1996) (discussing drug traffickers use of dryer sheets to mask scent of narcotics).

[3] We note that because Trooper Walker had probable cause to search the suitcase, we need not reach Palacios's argument that the officers did not conduct the inventory search pursuant to a policy or standardized procedures.

## CONCLUSION

We affirm the judgment of the trial court.


Karen Angelini, Justice

Publish