AFFIRMED; Opinion Filed November 1, 2012.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-10-01177-CR

**JONATHAN EGUAEOSA IDELE ERO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court At Law No. 6
Collin County, Texas
Trial Court Cause No. 006-80519-10**

# OPINION

Before Chief Justice Wright and Justices Moseley and Campbell
Opinion By Justice Campbell[1]

Appellant was charged by information with driving while intoxicated. *See* TEX. PENAL CODE

ANN. § 49.04(a) (West Supp. 2012). He waived his right to a jury trial and tried his case before the

court. The trial court found him guilty and assessed his punishment at 120 days' confinement in the

county jail and a fine of $800. Imposition of the jail time was suspended and appellant was placed

on community supervision for fifteen months. Appellant raises a sole point of error, claiming that

"the stop of Appellant's vehicle was not based on articulable facts supporting suspicion of criminal

---

[1] The Honorable Charles F. Campbell, Senior Appellate Judge, Texas Court of Criminal Appeals, sitting by assignment.

activity." We disagree and affirm.

## FACTS

On January 17, 2010, between 1:30 a.m. and 1:50 a.m., Officer Jason Moses of the Plano Police Department was traveling south on Highway 75 when he observed appellant's vehicle traveling slowly compared to other traffic on the highway. Moses began to follow appellant and executed a traffic stop after seeing appellant's vehicle swerve inside its lane from white line to white line; drive onto the shoulder and back onto the road; straddle the line for approximately six seconds; and change lanes without signaling. Moses stopped appellant's vehicle. After approaching the vehicle, Moses smelled an alcoholic beverage in the vehicle and inquired whether appellant had consumed any alcohol. Appellant admitted he had consumed "a little."

Moses administered a series of field sobriety tests to appellant, including the HGN test, the one-leg stand test, and the walk-and-turn test. All of the tests indicated appellant was intoxicated. Moses also administered a portable breath test to appellant, which did not reveal the presence of alcohol because appellant did not blow hard enough. Moses arrested appellant for driving while intoxicated because he was of the opinion that appellant had lost the normal use of his mental and physical faculties due to alcohol consumption.

## ARGUMENTS OF PARTIES

Appellant contends the police did not have reasonable suspicion that a crime was being committed when Moses stopped him, thus violating appellant's Fourth Amendment protection against illegal seizure. The State responds appellant waived his right to contest the seizure because he failed to file a motion to suppress and he failed to object during trial to the admissibility of evidence that was seized. Alternatively, the State contends Officer Moses had ample reasonable

suspicion to stop appellant.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, an appellate court must apply a standard of abuse of discretion and overturns the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State,* 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). An appellate court must apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a *de novo* standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Id.* at 922–23.

## WAIVER

As a threshold matter, the State argues appellant has waived his Fourth Amendment claim by failing to file a motion to suppress or argue the claim at trial. The State primarily relies on *Palacios v. State,* 319 S.W.3d 68 (Tex. App.–San Antonio 2010, pet. ref'd), for the proposition that appellant waived any claim by failing to file a written motion to suppress or object at trial. The State argues that appellant's attack on the officer's stop of appellant's vehicle came too late since it came at closing argument. The State cites no authority for this proposition. Closing argument is a discrete part of a trial. In any event, the facts in *Palacios* are significantly different from those in the instant case.

In *Palacios* the State sought to offer contraband marijuana contained in a suitcase into evidence, and the defendant affirmatively stated "no objection." *Palacios,* 319 S.W.3d at 71–72. And even though Palacios had, on file, a motion to suppress, his claim was denied on the basis of an affirmative waiver. *Id.* at 74. In the instant case, appellant vigorously cross-examined Officer

Moses on both reasonable suspicion and probable cause, and then in final argument before the trial court, he argued that probable cause for arrest had not been shown. From this record, it appears that appellant was attacking both the officer's reasonable suspicion and probable cause to stop appellant's vehicle. Unfortunately, in his final argument to the trial court, appellant mixes reasonable suspicion and probable cause together into a blended mass of concepts, using the phrase "probable cause" as if it were a talisman for all Fourth Amendment claims. However, even if the State is correct or if the question of waiver is left undecided, the issue is rendered insignificant because we conclude the evidence reflects both reasonable suspicion and probable cause.

## MERITS—FOURTH AMENDMENT

Reasonable suspicion for a warrantless detention exists when an officer has specific, articulable facts, along with any rational inferences, that lead him to reasonably conclude that a person is, has been, or soon will be, engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In determining reasonable suspicion, the trial court looks at the totality of circumstances to inform whether there was an objective basis for the stop. *Ford v. State,* 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005). This includes circumstances that may seem innocent enough when viewed in isolation, but when combined, suggest that criminal activity may be afoot. *Woods v. State,* 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

During trial and in his brief, appellant contends that an officer who effectuates a *Terry*-type stop based on a traffic violation, must be able, through the prosecutor, to prove all the elements of that traffic offense. He further contends that what the officer observes must be against the law. In the cases cited by appellant, the temporary stops were based on make-or-break situations that failed to pass muster for one reason or another. *See, e.g., State v. Dixon,* 206 S.W.3d 587 (Tex. Crim. App.

-4-

2006) (concluding stop was invalid where the trial court found defendant did not commit the two alleged traffic violations). In the instant case, the facts show a series of inchoate driving events that ultimately led to the stop.

Moses initially observed appellant driving slower than the other highway traffic. Moses then followed appellant and observed four additional inchoate events—appellant swerved inside of his lane from white line to white line; he drove onto the shoulder and back onto the road; he straddled the white line for approximately six seconds; and he changed lanes without signaling. While some of these acts by appellant constituted inchoate traffic offenses and perhaps were not sustainable beyond a reasonable doubt, they formed a pattern of conduct that led Moses to conclude that appellant's driving was dangerous, and ultimately led him to stop appellant's vehicle. The facts in this case are closely analogous to those in *Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011).

In *Derichsweiler*, civilian eyewitnesses observed the defendant drive up close to their vehicle and stare, then grin at them for thirty seconds to a minute while they were in a drive-thru line at McDonalds. *See id.* at 909. When the witnesses were asked to pull forward to wait on their food, the defendant drove up and positioned his car in front of theirs, then drove around the building and pulled up again behind and to the left of them, repeating the same conduct. *See id.* While the witnesses called the police to report the defendant's conduct, they observed him drive into a nearby Walmart parking lot, where the defendant repeated the same conduct with two other vehicles. *See id.* at 910. Police approached the defendant's vehicle, detained the defendant, and then smelled a strong odor of alcohol emanating from his vehicle. He was arrested and charged with driving while intoxicated. *See id.* at 910–11.

The court of criminal appeals granted review in *Derichsweiler* to determine whether the facts adduced [that] give rise to a reasonable suspicion must show that the detainee has committed, is committing, or is about to commit, a particular and distinctively identifiable penal offense. *See id.* at 909. That Court stated:

> unlike the case with probable cause to justify an arrest, it is not a *sine qua non* of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction. The reason is simple but fundamental. A brief, investigative detention constitutes a significantly lesser intrusion upon the privacy and integrity of the person than a full blown custodial arrest. For this reason, a warrantless investigative detention may be deemed 'reasonable' for Fourth Amendment purposes on the basis of a lesser quantum or quality of information—reasonable suspicion rather than probable cause. . . . Particularly with respect to information suggesting that a crime is *about* to occur, the requirement that there be 'some indication that the unusual activity is related to crime' does not necessarily mean that the information must lead inexorably to the conclusion that a particular and identifiable penal code offense is imminent.

*Id.* at 916–17.

In the instant case, Moses possessed enough information to not only believe appellant committed traffic violations but also to be suspicious appellant was driving while intoxicated. While at the moment of detention any one traffic violation may not have been probable beyond a reasonable doubt, the five instances of impaired driving were enough to cause reasonable suspicion that criminal activity was afoot.

Additionally, Moses had probable cause to arrest appellant for driving while intoxicated. In addition to the evidence supporting the *Terry* stop, the following was developed after the detention was effectuated: appellant admitted he drank "a little" that night; and he exhibited intoxication on three field sobriety tests, including the HGN test. We conclude these three tests when added to the five instances of driving violations, more than support the trial court's finding of probable cause to arrest appellant for driving while intoxicated. Appellant's sole point of error is overruled.

The trial court's judgment is affirmed.

_____
CHARLES F. CAMPBELL
JUSTICE, ASSIGNED

Do Not Publish
TEX. R. APP. P. 47
101177F.U05

—7—



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JONATHAN EGUAEOSA IDELE ERO,
Appellant

No. 05-10-01177-CR     V.

THE STATE OF TEXAS, Appellee

Appeal from the County Court At Law No. 6
of Collin County, Texas. (Tr.Ct.No. 006-
80519-10).
Opinion delivered by Justice Campbell,
Chief Justice Wright and Justice Moseley
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered ___November 1, 2012___ .

_____
CHARLES F. CAMPBELL
JUSTICE, ASSIGNED