O'CONNOR v. The EMPIRE STATE. See Case No. 4,474.

O'CONNOR v. LANG. See Case No. 10,419.

---

## Case No. 10,419.

O'CONNOR v. The OCEAN STAR.

O'CONNOR v. LANG.

[1 Holmes, 248.] [1]

Circuit Court, D. Massachusetts. Aug., 1873.

GENERAL AVERAGE—STRANDING.

When a vessel is voluntarily stranded for the general safety of ship, cargo, and crew, the loss thereby is a general average loss.

---

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

[Appeal from the district court of the United States for the district of Massachusetts.]

Appeals in admiralty from the district court of Massachusetts. That court dismissed the libel of [Jeremiah] O'Connor, appellant, for contribution from the owners of the schooner Ocean Star, to indemnify him, as owner of her cargo, for damage to the cargo and expenses incurred by him, by reason of alleged wrong and negligence of the master, unnecessary stranding, and unjustifiable deviation; and made a decree in favor of the master of the schooner, [William] Lang, upon a libel brought by him against O'Connor, for a general average contribution for the damage to the vessel, upon the ground that it was caused by voluntary stranding. [Case unreported.] The two cases were heard together.

Lathrop, Abbot & Jones, for appellants.
Frank Goodwin, for appellees.

SHEPLEY, Circuit Judge. The schooner Ocean Star sailed from Halifax for Boston, with a cargo of metals and junk belonging to Jeremiah O'Connor. The vessel and cargo, in a gale of wind, were stranded on Nantasket Beach, the vessel having previously struck on "The Hardings," near the entrance of Boston harbor. The cargo was taken out and brought to Boston, the port of destination. The vessel was thereafter got off the beach and towed to Boston. O'Connor, the consignee and owner of the cargo, libelled the vessel for a contribution for the expenses of taking out the cargo on the beach, and for damage claimed by him to have been suffered by the cargo from the weather while on and near the wreck. By an amendment to his libel, he also claimed damages for alleged wrongful and negligent conduct of the master, and by reason of an alleged unjustifiable deviation.

The master of the Ocean Star, William Lang, shortly thereafter filed his libel for a general average contribution, alleging that he voluntarily stranded the vessel on Nantasket Beach, to save the property at risk and the lives of those on board. These libels were heard together, as one case, in the district court. An interlocutory decree was entered in that court for the libellant for a general average contribution, with a reference to a commissioner to assess the damages. On the coming in of the commissioner's report, the exceptions which had been filed by O'Connor's counsel to the report of the commissioner were overruled, and a final decree was entered in favor of William Lang, the master, against O'Connor, for the sum of nine hundred and twenty-four dollars and seventy-five cents.

On the libel of O'Connor against the Ocean Star, the district court made an interlocutory decree for an adjustment, with a reference to a commissioner to assess and report to the court the amount of damages sustained by the libellant. On the coming in of the report of the commissioner, "that no injury was done to the cargo by the stranding or discharging at the place of distress, as a foundation for the claim for a general average contribution," the court overruled the exceptions of O'Connor to the report of the commissioner, and declined to recommit the case to the commissioner, as prayed for by the libellant; and dismissed the libel, with costs for the claimant. An appeal was taken in both cases, and the two appeals were heard at the same time in this court.

I am not satisfied from the evidence in this case that there was any such wrongful or negligent conduct of the master, or any such unjustifiable deviation, as set up by O'Connor, preceding the stranding, as would render him liable for the loss, or deprive the vessel of the right to a general average contribution from the cargo, if the stranding was voluntary. If the stranding had been occasioned or rendered necessary by any such unjustifiable deviation, or wrongful or negligent act of the master, it must be attributed to that fault, rather than the sea peril, although the sea peril may coexist and enter into the case. The Portsmouth, 9 Wall. [76 U. S.] 682. It appears that on the morning of December 6, the vessel was about three miles from Cape Ann, when the schooner shaped her course for Boston light; that, fifteen or twenty minutes after leaving Thatcher's Island, a snowstorm set in, which increased in severity, soon becoming a blinding and furious storm; that the master, deeming it on the whole for the best under the circumstances, still held his course for Boston, the port of destination. Some hours after, the master found himself close to the rock known as "The Hardings," just outside of Boston harbor. In wearing to clear these breakers, the foresail came over and split, and the keel just grazed aft. The master then concluded that his best course was to beach the vessel, and headed her for Nantasket Beach. He shaped his course along the beach, and finally selecting the best place for the purpose, he put her head on Nantasket Beach. It is contended that the master should have made a harbor at Gloucester or Salem, or, if he ran for Boston, should have gone up Broad Sound instead of Light-House Channel. The testimony of the experts shows that it would have been more prudent to have made a harbor of necessity, if the necessity was seasonably apparent. But the evidence fails to show such an impending peril when off Cape Ann, as would certainly have rendered it incumbent on the master to deviate from his course at that time, and make a harbor. When, after passing the cape, the gale increased in intensity, and the thickness of the fog and snow increased, it was too late to have made either Gloucester or Salem. The master was more familiar with the harbor of Boston than with either of the others. Nor do I perceive how he could be charged with culpable negligence in choosing the main ship-channel as he did.

It is well settled in the courts of the United States, that where a vessel and cargo are in common peril, and the master, for the purpose of avoiding the greater peril, selects another and less peril, he can recover compensation in general average from the cargo thereby saved. When a vessel is voluntarily stranded with a view to promote the general safety, the damage to the vessel is a general average loss. It does not prevent a recovery if the stranding was the best thing to be done, regarding only the condition of the vessel. Here was a common peril; a voluntary sacrifice, so far as any such sacrifice which is the foundation for a general average claim is ever voluntary; for there must always be a forced choice,—in the words of Boulay-Paty, "Il faut qu'il ait volonté forcé,"—and a successful attempt to avoid the greater peril.

After careful revision of the exceptions, I see no reason to doubt the correctness of the judgment of the district court overruling the exceptions and confirming the report of the commissioner.

Decree of the district court affirmed with costs; and with interest in the case wherein Lang is libellant.