**Affirmed and Opinion filed October 27, 2020.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-19-00433-CR**

**STEPHEN J. RAMIREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1569210**

## OPINION

A jury convicted appellant Stephen J. Ramirez of felony driving while intoxicated (DWI). *See* Tex. Penal Code Ann. §§ 49.04, 49.09(b)(2). Appellant stipulated to the existence of two prior DWI convictions and the trial court sentenced appellant to serve four years in prison. Appellant raises three issues on appeal. In his first and second issues, appellant argues that the trial court abused its discretion when it refused to exclude evidence related to (1) the lab analysis of his blood, and (2) the initial traffic stop by the police. We conclude that the trial

court did not abuse its discretion when it refused to exclude evidence related to the lab analysis of his blood because the blood was drawn, and subsequently analyzed, pursuant to a search warrant. We deny appellant's second issue because the deputy constable who stopped appellant had reasonable suspicion that appellant had engaged in, or was about to engage in, criminal activity. In his third issue appellant argues that the trial court erred when it incorrectly defined the relevant law in the jury charge. We overrule this issue because any error in the charge was harmless. We therefore affirm the trial court's judgment.

## BACKGROUND

Because appellant does not challenge the sufficiency of the evidence supporting his conviction, we include only those facts necessary to address the issues he raises on appeal.

Deputy Constable Avila of the Harris County Precinct 4 Constable's office was driving eastbound on the northwest corner of the Sam Houston Tollway early in the morning of October 31, 2017. As Avila approached the interchange with Highway 249, he saw appellant's truck stopped on the Highway 249 connector ramp above him. According to Avila, appellant had stopped his truck on the connector ramp and the truck was impeding traffic. In addition, Avila saw appellant exit his stopped truck and walk over to the passenger side of his truck, where he appeared to urinate. Avila observed traffic trying to get around appellant's truck, which was stopped on the one-lane flyover. According to Avila, there was little room to pass.

Avila shined a spotlight at appellant. Avila testified appellant ignored the spotlight shining up at him. According to Avila, appellant eventually walked back to the driver's side of his truck, got into the truck, and then started driving down the ramp toward the Sam Houston Tollway. Once appellant began driving down

2

the ramp Avila drove forward and pulled over to the shoulder where he waited for appellant's truck to enter the Sam Houston Tollway. When Avila saw appellant's truck drive onto the tollway, Avila initiated a traffic stop. When Avila approached appellant in his truck, Avila observed that appellant had red, glassy eyes, and when he questioned appellant, appellant slurred his speech, and stated he was "coming from home" and "going home." Avila also smelled a strong "odor of an alcoholic beverage emanating from" appellant's breath or body. Appellant admitted to having "had a few beers."

At that point, Avila began performing field sobriety tests on appellant. Avila initially conducted the horizontal gaze nystagmus (HGN) test. According to Avila, appellant showed all six clues on the HGN test. Avila testified that this showing indicated to him that appellant "was over the State limit" and might be intoxicated. Appellant refused to perform the remainder of the field sobriety tests. Because appellant refused to participate in further field sobriety tests, Avila drove appellant to the nearest police station where Avila could obtain a search warrant and have appellant's blood drawn. According to Avila, during the drive to the police station, appellant was so intoxicated that he believed Avila was taking him home.

Once at the police station a search warrant was obtained to take samples of appellant's blood. The samples were obtained and subsequent testing revealed that appellant had a blood-alcohol concentration above the legal limit. At the conclusion of the evidence the jury found appellant guilty and the trial court sentenced him to serve four years in prison.[1] This appeal followed.

---

[1] Appellant stipulated that he had two previous DWI convictions. *See* Tex. Pen. Code Ann. § 49.09(b)(2) ("An offense under Section 49.04, 49.045, 49.05, 49.06, or 49.065 is a felony of the third degree if it is shown on the trial of the offense that the person has previously been convicted: . . . two times of any other offense relating to the operating of a motor vehicle while

3

## I. The trial court did not err when it refused to exclude evidence of the analysis of appellant's blood.

In his first issue, appellant argues that the trial court abused its discretion when it refused to exclude the analysis of his blood sample because, in appellant's view, the State was required to obtain a second search warrant to conduct the analysis of the blood sample. Appellant also argues that the trial court should have excluded the blood analysis because the search warrant was stale by the time the actual analysis was performed. We disagree with both arguments.

### A. Standard of review and applicable law

Appellant filed a motion to suppress the results of the analysis of his blood on the same day that the jury was impaneled in his case. He did not, however, argue in the motion to suppress that a second warrant was required to conduct the blood analysis. Appellant instead argued that the trial court should exclude the blood analysis because the search warrant was stale. The record establishes that the trial court did not conduct a hearing on appellant's motion to suppress prior to the start of appellant's trial.[2] The written motion was instead addressed during a break in the trial. In addition to the argument raised in the written motion, appellant argued during the hearing that a second search warrant was required before the State could conduct an analysis of appellant's blood. The trial court heard appellant's arguments and the State's response before denying appellant's motion to suppress.

---

intoxicated[.]").

[2] Generally, a criminal trial on the merits begins when the jury is impaneled and sworn. *See McCoslin v. State*, 558 S.W.3d 816, 819–20 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (reviewing cases addressing "the meaning of the phrase the date on which the trial on the merits commences") (internal quotation marks omitted).

We review a trial court's denial of a motion to suppress for an abuse of discretion. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014). In conducting the review, we give almost total deference to a trial court's express or implied determination of historical facts and consider de novo the court's application of law to the facts. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). The trial court is the sole trier of fact and judge of the credibility of witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We will sustain the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

**B.    The trial court did not abuse its discretion when it denied appellant's motion to suppress because two search warrants were not required.**

In his first issue appellant argues that the trial court abused its discretion when it refused to exclude the blood analysis evidence from his trial because the extraction of the blood and the subsequent analysis of that blood constitute two distinct searches which required the State to obtain two search warrants. Appellant cites the Court of Criminal Appeals' recent *State v. Martinez* opinion in support of his argument. 570 S.W.3d 278, 292 (Tex. Crim. App. 2019). Appellant contends that since the State obtained only a single search warrant, for the extraction of appellant's blood, which he does not challenge, the subsequent analysis of that blood sample infringed upon his Fourth Amendment rights against unreasonable government intrusion into his legitimate expectation of privacy. Because *Martinez* is distinguishable on its facts, we disagree.

In *Martinez* the defendant was involved in a traffic accident. *Martinez*, 570

5

S.W.3d 281. Martinez was taken to the hospital where his blood was drawn for medical purposes. *Id.* Martinez was subsequently indicted for intoxication manslaughter. *Id.* The State later acquired Martinez's blood pursuant to a grand jury subpoena. *Id.* at 282. The State then tested Martinez's blood without first obtaining a search warrant. *Id.* at 281. Martinez filed a motion to suppress arguing, among other things, that his blood was obtained in violation of his rights against unreasonable searches and seizures under the Fourth Amendment of the United States Constitution and article 1, section 9 of the Texas Constitution. *Id.* at 282. The trial court granted Martinez's motion to suppress and the court of appeals affirmed. *Id.* at 282–83. The Court of Criminal Appeals affirmed the court of appeals, holding that "there is a privacy interest in blood that has already been drawn for medical purposes." *Id.* at 292. The Court of Criminal Appeals continued that Martinez

> had a subjective expectation of such a privacy interest in his blood, and the State's subsequent testing of the blood was a Fourth Amendment search separate and apart from the seizure of the blood by the State. Because no exception to the warrant requirement applied, the State was required to obtain a warrant before testing [Martinez's] blood.

*Id.*

The Court of Criminal Appeals has now directly addressed and rejected the same argument appellant raises in the first part of his first issue. *See Crider v. State*, ____ S.W.3d ____, 2020 WL 5540130, at *3 (Tex. Crim. App. Sept. 16, 2020). In *Crider* the Court of Criminal Appeals distinguished *Martinez* on its facts. *Id.* The court explained that

> the State obtained the blood sample by way of a magistrate's determination that probable cause existed to justify its seizure–for the explicit purpose of determining its evidentiary value to prove the

6

offense of driving while intoxicated. That magistrate's determination was sufficient in this case to justify the chemical testing of the blood. And this is so, we hold, even if the warrant itself did not expressly authorize the chemical testing on its face.

*Id.*

The facts in the present case are, for all practical purposes, identical to those in *Crider*. Therefore, we reject appellant's contention that the State was required to obtain a second search warrant before testing appellant's blood for the reasons stated by the Court of Criminal Appeals in *Crider*. *Id.* We hold that the trial court did not abuse its discretion when it denied appellant's motion to suppress the results of the State's analysis of his blood samples.

### C. The trial court did not abuse its discretion when it denied appellant's motion to suppress because the search warrant was timely executed.

Appellant further argues in his first issue that the trial court abused its discretion when it denied his motion to suppress the results of the State's testing of his blood because the State did not conduct the analysis within three days of the issuance of the search warrant. Appellant cites article 18.07(a)(3) of the Texas Code of Criminal Procedure, which states the general three-day-period for a search warrant to be executed, in support of his argument. In other words, appellant's issue requires us to determine what it means to "execute" a search warrant pursuant to chapter 18 of the Code of Criminal Procedure. This appears to be an issue of first impression.

Statutory construction is a question of law, and our review of the trial court's construction of a statute is de novo. *Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009). We construe a statute according to its plain meaning, unless such a construction would lead to absurd results that the Legislature could not

7

possibly have intended or the language is found to be ambiguous. *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). To determine plain meaning, we examine the wording and structure of the statute, construing the words and phrases according to the rules of grammar and usage, unless they are defined by statute or have acquired a particular meaning. *Id.* We also presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible. *Id.*

In his argument appellant mentions only article 18.07 of the Code of Criminal Procedure and he ignores the remainder of chapter 18 of the Code. We, however, begin with article 18.01(a). It defines "search warrant" as "a written order, issued by a magistrate and directed to a peace officer, commanding him to search for any property or thing and to seize the same and bring it before such magistrate . . . ." Tex. Code Crim. Proc. Ann. art. 18.01(a). This definition establishes the purpose and scope of a search: locating and seizing evidence. *Id.* Article 18.01(b) sets forth the requirement that a search warrant must be based on the existence of probable cause as determined by the issuing magistrate. *Id.*, art. 18.01(b). Next, article 18.04 specifies the contents of a "search warrant" including a description of what is to be seized and the "person, place, or thing to be searched." *Id.*, art. 18.04. Article 18.06(a) establishes the general rule that "a search warrant must be executed within three days from the time of its issuance" and it then provides that "[a] peace officer to whom a search warrant is delivered shall execute the warrant without delay and forthwith return the warrant to the proper magistrate." *Id.*, art. 18.06(a). Article 18.06(b) continues that a peace officer must "present a copy of the warrant to the owner of the place, if he is present" while "the officer is executing the warrant." *Id.*, art. 18.06(b). Article 18.07 provides that most warrants, such as the one issued for the seizure of

appellant's blood, run for "three whole days." *Id.*, art. 18.07(a)(3). Finally, article 18.09 directs that "[w]hen the property which the officer is directed to search for and seize is found he shall take possession of the same and carry it before the magistrate." *Id.*, art. 18.09. Article 18.09 continues that "[f]or purposes of this chapter, 'seizure,' in the context of property, means the restraint of property, whether by physical force or by a display of an officer's authority, and includes the collection of property or the act of taking possession of property." *Id.* We conclude that, based on the plain language of chapter 18 of the Code of Criminal Procedure set out above, the three-day requirement for the execution of a search warrant sets the limit for the actual search for and seizure of the evidence by a peace officer, not the timing for any subsequent forensic analysis that may be conducted on the seized evidence.

This conclusion fits within the purpose of time restrictions on the execution of search warrants, which is to ensure that probable cause, as found by the neutral magistrate who signs the warrant, continues to exist. *See United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005) ("The policy behind the ten-day time limitation in Rule 41 is to prevent the execution of a stale search warrant."). This policy of requiring timely execution of warrants seeks to avoid a situation where, due to the passage of time, the information underlying the probable cause determination is no longer valid. *See United States v. Grubbs*, 547 U.S. 90, 95 (2006) (stating that "the probable-cause requirement looks to whether the evidence will be found *when the search is conducted*") (emphasis in original). Here, the search warrant was obtained, served on appellant, and appellant's blood was drawn and preserved, within hours of the initial traffic stop. We hold that the undisputed fact that the forensic analysis of appellant's blood occurred at a date beyond the three-day window for execution of the search warrant did not render the search warrant stale.

Therefore, the trial court did not abuse its discretion when it denied the part of appellant's motion to suppress in which appellant asserted that the search warrant was not timely executed.

Having addressed and rejected both arguments raised in appellant's first issue, we overrule that issue.

## II. Appellant did not preserve his second issue for appellate review.

In appellant's second issue he argues that the trial court abused its discretion when it refused to suppress all evidence related to Avila stopping appellant's vehicle because, in appellant's view, Avila did not possess reasonable suspicion to stop appellant. The State responds that appellant failed to preserve this issue for appellate review because he waited to object until after Avila had completed his testimony regarding his detention and arrest of appellant. Having reviewed the record, we agree with the State.

To preserve error for appellate review, a complaint must be timely and sufficiently specific to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1; *Wright v. State*, 374 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). In addition, unless the trial court directs a defendant to wait until all evidence is presented before seeking a ruling from the court on the exclusion of evidence, to preserve error on the admission of objectionable evidence, a party must object every time the allegedly inadmissible evidence is offered. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

Here, appellant did not object during Avila's testimony describing the events leading up to the traffic stop and his decision to arrest appellant.[3] Appellant also

---

[3] The only objection appellant made during Avila's testimony occurred when Avila

affirmatively notified the trial court that he had no objection to (1) State's Exhibit 4, the video of the traffic stop made by the dash camera in Avila's patrol vehicle; (2) State's Exhibit 5, the DIC-24 statutory warnings signed by appellant during the traffic stop as seen on State's Exhibit 4; and (3) State's Exhibit 6, the video made by the backseat camera in Avila's patrol vehicle. Appellant even extensively cross-examined Avila regarding the details of the traffic stop. Appellant did not object to Avila's testimony or other evidence regarding the traffic stop until after Avila had finished his testimony and left the witness stand, and the trial court recessed the trial for a short break. We conclude this is too late. *See Gonzalez v. State*, 563 S.W.3d 316, 322 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("Because appellant did not object and urge his motion to suppress until after Deputy Amstutz and others had given substantial testimony regarding the alleged illegally seized items, appellant's objection and the ruling on his motion to suppress were untimely."). Therefore, we hold that appellant did not preserve this issue for appellate review. We overrule appellant's second issue.

### III. Appellant was not egregiously harmed by the trial court's incorrect instruction on the definition of "impeding traffic."

Appellant argues in his third issue that the trial court erred when it gave an incorrect article 38.23 instruction and that he was egregiously harmed as a result. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (authorizing trial courts to instruct juries to disregard evidence that was illegally seized). According to appellant, the trial court did not give the jury a correct legal definition for "impeding traffic,"[4]

---

testified regarding his administration of the HGN field sobriety test to appellant. In making the objection, however, appellant sought only to prevent Avila from opining that the HGN test results can correlate to a blood-alcohol level and he "wanted to make sure that wasn't happening." The trial court did not rule on appellant's objection.

[4] Impeding traffic "is a legal conclusion, not a factual finding, because it asserts a violation of Section 545.363(a) of the Texas Transportation Code." *Delafuente v. State*, 414

providing instead the definition for the offense of "obstructing a highway."[5] Assuming for purposes of this appeal that the trial court's instruction was erroneous, because appellant did not object to the charge, he must establish that he was egregiously harmed. *Abnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). We conclude appellant has not established egregious harm because any error in the instruction was harmless.

An article 38.23 instruction is proper only when there are "disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509–510 (Tex. Crim. App. 2007). The statute is "mandatory, and when an issue of fact is raised, a defendant has a statutory right to have the jury charged accordingly. The only question is whether under the facts of a particular case an issue has been raised by the evidence so as to require a jury instruction. Where no issue is raised by the evidence, the trial court acts properly in refusing to charge the jury." *Id.* at 510.

Appellant asserts there were disputed fact issues regarding the legality of Avila stopping appellant's truck based on whether appellant's vehicle was impeding traffic prior to the stop by Avila. Appellant does not, however, identify the conflicting evidence. Avila was the only witness who testified regarding the events preceding the traffic stop. Those events were not recorded by Avila's dash camera. In addition, Avila's testimony remained consistent that he observed a

---

S.W.3d 173, 177 (Tex. Crim. App. 2013). Section 545.363(a) prohibits driving "so slowly as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with law." Tex. Transp. Code Ann. § 543.363(a).

[5] The offense of "obstructing a highway" occurs when a person "without legal privilege or authority . . . intentionally, knowingly, or recklessly . . . obstructs a highway." Tex. Penal Code Ann. § 42.03(a). The same section defines "obstruct" as "to render impassable or to render passage unreasonably inconvenient or hazardous." *Id.* § 42.03(b).

white Dodge pick-up truck impeding the flow of traffic on the connector ramp. While Avila admitted during cross-examination that he did not see the lettering on the tailgate of the stopped truck or the truck's license plate, he testified that he could see the truck's taillights and was able to identify the manufacturer of the truck as a result. It is undisputed appellant was driving a white Dodge pick-up truck when he was stopped.

Finally, Avila consistently testified during direct and cross-examination, that he saw appellant's white pick-up truck impeding traffic on the connector ramp and that he stopped that same truck once it came down off the ramp and entered the tollway. Having reviewed the record, we conclude there was not a disputed fact issue regarding the legality of the traffic stop and appellant was therefore not entitled to an article 38.23 instruction. Because appellant was not entitled to the instruction, any error contained therein is harmless. *See Hughes v. State*, 897 S.W.2d 285, 301 (Tex. Crim. App. 1994) (concluding that when defendant was not entitled to a mitigating evidence instruction, any error in the instruction actually given by the trial court was harmless because it could not have contributed to the jury's answers). We overrule appellant's third issue.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's final judgment.

/s/    Jerry Zimmerer
        Justice

Panel consists of Chief Justice Frost and Justices Zimmerer and Poissant.

Publish — TEX. R. APP. P. 47.2(b).