# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00083-CR

**Dustin Ray Randig, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 368TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 17-1847-K368, THE HONORABLE RICK J. KENNON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Dustin Ray Randig of the felony offense of intentionally or knowingly possessing with intent to deliver a controlled substance in Penalty Group 1—methamphetamine—in an amount of 200 grams or more but less than 400 grams. *See* Tex. Health & Safety Code § 481.112(a), (e). Randig had moved to suppress evidence seized from his backpack, and the trial court carried the motion with the case and then denied it during the first day of testimony in the guilt–innocence phase of trial. The jury assessed punishment at 32 years' imprisonment, and the trial court entered a conforming judgment.

In three issues, Randig contends that the trial court (1) abused its discretion by admitting evidence of weapons and ammunition found in his car, (2) should have suppressed evidence of the methamphetamine found by opening his closed backpack, and (3) erred by not instructing the jury under Code of Criminal Procedure article 38.23(a). We affirm.

## BACKGROUND

In the early morning hours of September 14, 2017, Deputy Jeremy Jones of the Williamson County Sheriff's Office was patrolling Highway 95. He pulled over a car with a malfunctioning headlight and found its driver to be nervous, sweating, and without his driver's license. Because the driver could not remember his driver's-license number, Deputy Jones asked the car's only passenger, Randig, for his license. He noticed a black backpack on the passenger floorboard between Randig's legs.

Deputy Jones returned to his patrol car to run Randig's license. He discovered that Randig had an outstanding felony warrant for his arrest. Deputy Jones called for backup, and Sheriff's Office Deputy Michael Netherton soon arrived to help detain Randig. After they approached the car, the deputies had the driver and Randig get out. Deputy Jones handcuffed the driver, took him back to his patrol car and spoke to him there, and asked for consent to search the car. The driver refused consent because the car was Randig's. Deputy Netherton approached the passenger side of the car and saw the black backpack on the floorboard between Randig's feet. Randig was "clutching" the backpack with his right hand. The deputies asked for Randig's consent to search the car once they learned that the car was his, but Randig refused consent too. Deputy Netherton searched Randig's person and then put him into a patrol car.

With Randig now under arrest, the driver without his license, and the car parked in an unsafe position at nighttime on a road with little improved shoulder, the deputies impounded the car because Sheriff's Office policy required either that the car be released to someone who could provide proof of a valid license who could drive it away or be impounded. The deputies eventually told the driver that he was free to go. Sheriff's Office policy also requires officers to inventory the contents of any car that will be impounded.

2

While Deputy Jones was in his patrol car with Randig, Deputy Netherton conducted the inventory. He first noticed loose rounds of ammunition on the front-passenger-side floorboard. He asked Randig if there was a handgun in the car, but Randig simply shrugged. He then looked inside the closed black backpack. Inside "were several clear plastic baggies that contained . . . a white or clear crystal-like substance" that the officers thought to be methamphetamine plus a digital scale. Deputy Netherton showed the backpack's contents to Deputy Jones.

Deputy Netherton also found other ammunition and weapons in the car: one loaded .45-caliber semiautomatic on the back-passenger-side floorboard and a revolver in the trunk. He found the other ammunition in the car's center console and in the trunk.

The State indicted Randig for intentionally or knowingly possessing with the intent to deliver methamphetamine, in an amount of 200 grams or more but less than 400 grams. At trial, Deputy Jones, Deputy Netherton, and others testified, and the trial court admitted into evidence Deputy Jones's patrol-car recording. The jury convicted Randig as indicted, the trial court entered judgment on the verdict, and Randig now appeals.

## DISCUSSION

### I. Randig's trial objections do not comport with his appellate complaints under Rules of Evidence 401, 402, 403, and 404(b).

In his first issue, Randig contends that the trial court abused its discretion by admitting evidence of the weapons and ammunition found in the car because it was irrelevant, its danger of unfair prejudice substantially outweighed its probative value, and it was extraneous-act evidence offered to show character conformity. The State responds that Randig did not preserve this issue for appellate review because none of his trial objections to the evidence of the weapons and ammunition, which raised violations of the Fourth Amendment and Article I, Sections 9 and

3

19, of the Texas Constitution, comport with his appellate complaints, which concern Rules of Evidence 401, 402, 403, and 404(b).[1]

The State is correct. Deputy Netherton testified about his inventory of the car, during which he discovered ammunition loose in the car and in the center console and trunk; a loaded, .45-caliber semiautomatic on the back floorboard; and a revolver in the trunk. Randig's only trial objection to any of Deputy Netherton's testimony about these discoveries was that seizing the items violated the constitutional provisions that were the basis of his motion to suppress. Randig did not object on any of the grounds that he now raises on appeal—relevance, the danger of unfair prejudice substantially outweighing the evidence's probative value, or extraneous-act evidence offered to show character conformity. His trial objections therefore do not comport with his complaints on appeal, thus he has not preserved his first issue for our review. *See Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017) (to be preserved for appellate review, defendant's claim on appeal must comport with objection preserved in trial court); *Brock v. State*, 495 S.W.3d 1, 12 (Tex. App.—Waco 2016, pet. ref'd) ("Brock objected that the message had not been properly authenticated. Because Brock did not make a specific objection under Texas Rule of Evidence 403 at the time the evidence was introduced, we conclude that Brock's complaint on appeal does not comport with his trial-court objection."); *Ybarra v. State*, 890 S.W.2d 98, 115 (Tex. App.—San Antonio 1994, pet. ref'd) ("Appellant now claims that that evidence of threats to the witness was not admissible because he was not shown to be the perpetrator of the extraneous

---

[1] Randig's pretrial motion to suppress argued that "[e]vidence was seized during the detention and investigation that preceded the arrest" and "[c]ounsel feels the evidence was seized illegally, and should be suppressed" but without any reference to the legal basis for suppression.

offense. This is true, but neither this complaint nor a claim of violation of Rule 404(b) comport with the trial objections. Nothing is presented for review." (internal citation omitted)).

**II.     Randig did not preserve his suppression issue about the methamphetamine in his backpack because "substantial testimony" about it came in before he objected.**

In his second issue, Randig contends that the trial court should have suppressed evidence of what officers found during a warrantless search of his closed backpack under the state and federal constitutions. This contention was the subject of his pretrial motion to suppress, which the trial court carried with the case and then denied on the first day of testimony in the guilt–innocence phase of trial. The State argues that Randig did not preserve his second issue because evidence of what he sought to suppress came in earlier during that day of trial without objection.

To preserve error about the admission of allegedly illegally seized evidence, a defendant must either move to suppress the evidence and obtain a ruling or timely object when the State offers the evidence at trial. *Ratliff v. State*, 320 S.W.3d 857, 860–61 (Tex. App.—Fort Worth 2010, pet. ref'd); *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *see* Tex. R. App. P. 33.1(a); *Ross v. State*, 678 S.W.2d 491, 493 (Tex. Crim. App. 1984). Generally, if the trial court before trial denies a motion to suppress, the defendant need not object to the same evidence during trial to preserve the suppression complaint. *Garza v. State*, 126 S.W.3d 79, 84 (Tex. Crim. App. 2004).

But if the trial court carries the pretrial motion to suppress with the case, the defendant must object and obtain a ruling at the earliest opportunity to preserve the suppression complaint. *Gonzalez v. State*, 563 S.W.3d 316, 321 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Palacios v. State*, 319 S.W.3d 68, 72 (Tex. App.—San Antonio 2010, pet. ref'd); *Thomas v. State*, 884 S.W.2d 215, 216–17 (Tex. App.—El Paso 1994, pet. ref'd); *see Garza*, 126 S.W.3d at 84–85.

5

That opportunity often arises when a witness gives "substantial testimony" about the allegedly illegally seized evidence. *Gonzalez*, 563 S.W.3d at 322; *Ratliff*, 320 S.W.3d at 861; *see Angelo v. State*, 977 S.W.2d 169, 177 (Tex. App.—Austin 1998, pet. ref'd) (holding that defendant failed to preserve complaint about admission of evidence because he "did not object on this ground until the State had already elicited substantial testimony regarding the" evidence, making his later objection "too late").

Here, before the trial court denied the motion to suppress, Deputy Jones testified before the jury that Deputy Netherton told him that he needed to look inside the black backpack and that Deputy Jones remembered seeing that backpack between Randig's legs when he first pulled the car over. Randig did not object to this testimony. Deputy Jones then testified that inside the backpack "were several clear plastic baggies that contained . . . a white or clear crystal-like substance" that he thought to be methamphetamine. Randig again did not object. Then Deputy Jones testified that he thought it "a rather large amount" of methamphetamine. Randig still did not object. Deputy Jones then testified about "multiple weapons . . . in the vehicle." Randig objected, and the trial court overruled the objection.

On three later occasions, but still before the trial court denied the motion to suppress, Deputy Jones again testified about the methamphetamine. Randig objected all three times, on the grounds that he now complains about on appeal. First, when the State offered the video of the traffic stop and search of the backpack, Randig objected under the Fourth Amendment and Article I, Sections 9 and 19, of the Texas Constitution. Second, when Deputy Jones testified that Deputy Netherton remarked to Randig that he had a lot of meth with him, Randig objected: "I think I have to object to any of this testimony and move to strike it until a formal offer of the exhibit is made and I have the time to object." Finally, when Deputy Jones again testified about

6

what he saw in the backpack, starting to say "[t]here was a large amount of—," Randig objected and raised the same constitutional provisions as before. The trial court overruled all three of these objections and, in the last instance, allowed Deputy Jones to finish his answer: he saw in the backpack "multiple clear plastic bags with a clear or white crystal-like substance inside of it."

But before any of these three objections, Deputy Jones had already testified—without objection—that he looked inside Randig's backpack, that he found in it clear plastic baggies containing a white or clear crystal-like substance that he thought to be methamphetamine, and that there was a lot of it. Randig later sought to exclude this same testimony by his three objections, but it had already been admitted without objection. We thus conclude that Deputy Jones gave substantial testimony about the methamphetamine in Randig's backpack without objection. *See Gonzalez*, 563 S.W.3d at 322; *Ratliff*, 320 S.W.3d at 861; *Angelo*, 977 S.W.2d at 177. That earlier testimony was Randig's earliest opportunity to object while the trial court was carrying his motion to suppress with the case. *See Garza*, 126 S.W.3d at 84–85; *Gonzalez*, 563 S.W.3d at 321; *Palacios*, 319 S.W.3d at 72; *Thomas*, 884 S.W.2d at 216–17. Because he did not object to that earlier testimony,[2] he did not preserve his second issue for review.

---

[2] To the extent that Randig relies on his objection to the testimony about the weapons in the car, that objection does not comport with his complaint on appeal and thus did not preserve his second issue. *See Gomez v. State*, 459 S.W.3d 651, 669 (Tex. App.—Tyler 2015, pet. ref'd) (defendant did not preserve error because his argument at suppression hearing "did nothing to bring the trial court's attention to the issue he now seeks to raise" on appeal); *Rothstein v. State*, 267 S.W.3d 366, 373–74 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (motion to suppress stating one legal theory and arguments at suppression hearing advancing only same theory do not support different legal theory on appeal); *see also Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014) ("For a party to preserve a complaint for appellate review, the complaining party must make a specific objection and obtain a ruling on the objection. In addition, a party must make the complaint at the earliest possible opportunity, and the point of error on appeal must comport with the objection made at trial." (internal citation omitted)). His briefing on appeal concerns the officers' opening his closed backpack. That is where officers found the methamphetamine, but nothing in the record suggests that the weapons and ammunition were also in the backpack.

**III.** **Randig identifies no fact issue about the seizure of the methamphetamine from his backpack, but a fact issue is necessary for an Article 38.23(a) instruction.**

In his third issue, Randig contends that the trial court erred by not instructing the jury under Code of Criminal Procedure article 38.23(a), which provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

He argues that because "the evidence taken from the closed backpack . . . was obtained in violation of the federal and state constitutions . . . , [he] was entitled to a jury instruction" under the article. He also argues that the lack of the instruction egregiously harmed him, conceding that that standard applies here "[b]ecause defense counsel did not request such an instruction."

The State responds that defendants are entitled to an Article 38.23(a) instruction only when there is a fact dispute about how the evidence was obtained, and we agree. The Court of Criminal Appeals has concluded that the instruction "is allowed under article 38.23(a) 'only if there is a factual dispute as to how the evidence was obtained.' If there is no factual issue of how evidence was obtained, there is only an issue of law, which is not for a jury to decide under article 38.23(a)." *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007) (internal quotation and citations omitted); *see also Holmes v. State*, 248 S.W.3d 194, 199–200 (Tex. Crim.

---

Instead, Deputy Netherton later testified that the weapons were found either on the floorboard or in the trunk and the ammunition either on the floorboard or in the car's middle console.

8

App. 2008) (noting that Article 38.23(a) applies "only if there is a contested issue of fact about the obtaining of the evidence" and that "[t]here is, of course, nothing to instruct the jury about if the suppression question is one of law only, and there is nothing to instruct the jury about unless there is affirmative evidence that raises a contested fact issue" (internal quotation omitted)).

Randig's appellate brief identifies no fact issue about the seizure of the methamphetamine from his backpack. Instead, he reiterates his *legal* argument, from the merits portion of his second issue, about why he believes the seizure was unlawful.[3] Without a fact issue about the seizure, Randig was not entitled to an Article 38.23(a) instruction. *See Holmes*, 248 S.W.3d at 199–200; *Vasquez*, 225 S.W.3d at 545. The trial court thus did not err by omitting such an instruction. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (reversal for charge error requires both presence of error and requisite level of harm stemming from that error). We overrule Randig's third issue.

---

[3] In fact, at trial, when Randig's counsel raised the suppression issue before testimony began later the same day, he contested the lawfulness of the Sheriff's Office's inventory policy but added, "There's no, like, in dispute of what the facts are. The facts aren't in dispute. They're saying: We have a policy . . . . And I'm saying the Fourth Amendment doesn't count as that . . . ."

## CONCLUSION

We affirm the trial court's judgment.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   February 4, 2021

Do Not Publish