**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00145-CR**
**NO. 09-22-00146-CR**

_____

**MICHAEL CHRISTOPHER HURST, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 21-07-09226-CR and 21-07-09227-CR**

**MEMORANDUM OPINION**

Appellant Michael Hurst challenges his conviction for possession with intent to deliver a controlled substance in trial cause No. 21-07-09226-CR and his conviction for unlawful possession of a firearm by a felon in trial cause No. 21-07-09227-CR. *See* Tex. Health & Safety Code Ann. § 481.112(f); Tex. Penal Code Ann. § 46.04(a)(1). Both convictions were enhanced due to Hurst's previous criminal convictions. *See* Tex. Penal Code Ann. § 12.42.

1

In his appeal, Hurst contends that the trial court erred in overruling his motion to suppress "illegally seized" evidence, by refusing to submit a requested jury instruction regarding "illegally seized" evidence, and by overruling his objections to an exhibit that the State offered to link Hurst to a backpack in which a large amount of the controlled substance was found. Finding no reversible error, we affirm.

Background

On the date of his arrest, Hurst was driving a vehicle on a highway service road in Montgomery County. Deputy constable Duenas was driving his patrol car, and he also had his drug dog, Kodiak, with him. Duenas observed that the vehicle Hurst was driving had an obscured rear license plate, which he believed to be a traffic code violation. *See* Tex. Transp. Code Ann. § 504.945(a)(7). The deputy constable stopped the vehicle. After the deputy constable developed reasonable suspicion of criminal activity, the deputy constable had his drug dog conduct an outer perimeter sniff, the dog alerted, and then the deputy constable conducted a search of the vehicle. The officer found illegal drugs, drug paraphernalia, a shotgun, and a handgun inside the vehicle. We summarize below the evidence relevant to Hurst's appellate arguments.

1. Trial Testimony from Deputy Constable Rai Duenas

At the time of Hurst's arrest, Duenas was employed as a Deputy Constable. The Deputy Constable testified at trial and outlined his law enforcement training and experience, noting that in addition to the standard training to become a certified peace officer, he has specific training in drug interdiction and as a canine handler. Duenas testified that a typical traffic stop includes obtaining relevant information about the vehicle, the owner, and the driver, and writing traffic citations, and usually takes "10 to 15 minutes."

Before stopping Hurst, Duenas noticed that the car Hurst was driving had an obscured license plate. Because Duenas was unable to read the license plate, he initiated a traffic stop. According to standard procedure, Duenas checked the vehicle's license plates in his computer system and learned that the registration on the vehicle had expired. Duenas also learned that Hurst was not the registered owner of the vehicle. Duenas then approached the vehicle and spoke with the driver, who identified himself as Michael Hurst. There was also a passenger in the vehicle who was identified as Patricia Sorrentino.

When Deputy Constable Duenas first initiated his lights to stop the vehicle, he saw the driver, Hurst, immediately look back in the direction of Duenas, and that is when Duenas observed Hurst move something from the front seat to the back seat of Hurst's vehicle. After stopping Hurst's vehicle, Duenas spoke with Hurst, Duenas

3

noticed that Hurst seemed unusually nervous, and he observed Hurst was behaving in an odd manner. Duenas instructed Hurst to exit the vehicle, and then "patt[ed] him down" to ensure that Hurst had no weapons. Duenas also asked Hurst to empty his pockets, and Hurst complied. Duenas discovered that Hurst was carrying multiple denominations of currency, which Duenas considered a potential indication of drug trafficking. Duenas testified that further questioning of Hurst raised additional suspicion because Hurst delayed answering straightforward questions in a manner that Duenas believed was "buying time" and Hurst failed to provide direct answers to those questions. When Hurst then refused Duenas's request to search the vehicle, Duenas "deployed [his] canine partner[,]" Kodiak, to sniff the outside of the vehicle. The Deputy Constable testified that Kodiak "alerted," and the "alert" then led to what Duenas described as a "probable cause" search of the vehicle. The search of the front seat of the vehicle resulted in the discovery of a bag with a Glock handgun inside of it. The Glock was found under the driver's seat. Duenas also found a key lanyard along with a cylinder container that contained white rectangular-shaped pills. State's Exhibit 15 is a photograph of the white pills found in the cylinder container, and that exhibit was identified and admitted into evidence without objection.

Duenas found a backpack and a shotgun in the back seat of the vehicle, sitting on top of the seat, but in an area of the vehicle where his dog had alerted. The

4

backpack was near the middle of the back seat and the shotgun, which was wrapped in a towel, was underneath the backpack. Duenas testified that both were within Hurst's and the passenger's reach. Duenas searched the backpack and found a plastic container with a pink crystal-like substance in it, a leafy green substance he believed to be marijuana, packages that were labeled "THC edibles," and another large plastic container with a white, crystal-like substance, along with a clear plastic bag that contained smaller plastic bags and a digital scale. Based on his training and experience, he believed the items inside the backpack were controlled substances. The substances he found were later tested and confirmed to be methamphetamine, an illegal drug.

Photos from the scene were taken showing the items seized from the vehicle and were admitted at trial without objection as State's Exhibits 7, 8, 9, 10, and 20. State's Exhibit 20 is a photograph showing a patch found inside of the backpack and "BO$$" is on the patch. Duenas asked both Hurst and the passenger who owned the backpack, and both denied owning the backpack. The State asked Duenas on direct examination whether Duenas had viewed Hurst's profile on Facebook and about a post on the Facebook page where the defendant referred to himself as the "BOSS[,]" and whether the post also had a picture with a cap showing an emblem saying "BO$$." The defense objected to this testimony on the basis of "relevance and identity and authentication." The defendant objected to the introduction of evidence

5

pertaining to the Facebook post, and initially the trial court sustained the objection as to relevancy, but then allowed the State to develop the testimony further outside the presence of the jury. Outside of the presence of the jury, Duenas testified he had viewed the Facebook profile and Exhibit 32 was a photograph of the Facebook post showing a cap with an emblem of "BO$$." The State then offered Exhibit 32, and Hurst objected based on relevance and authentication. The State responded and argued that Hurst had posted a photograph of a cap with an emblem on the front of the cap that had the word "BO$$" written essentially the same way as a patch that Duenas found inside the backpack containing the methamphetamine, and therefore its admission is relevant to establish a link to the defendant and the backpack and to rebut a defensive theory. The trial court then overruled the objections and admitted Exhibit 32. Duenas then testified to the jury about how he obtained the Facebook post, about photographs 20 and 32, and Duenas testified about why he obtained the information and the relationship between the two exhibits. Duenas explained that Hurst calls himself the BOSS and used BO$$ on his Facebook posts and that the symbol matched the symbol found inside the backpack seized from the backseat of the vehicle driven by Hurst.

2. Trial Testimony of William Brent Steward

William Brent Steward testified that he is an investigator with the Montgomery County District Attorney's Office, he assists the District Attorney in

6

getting cases ready and ordering judgments, and he is a fingerprint examiner. Steward obtained inked fingerprints from Hurst and Steward identified a copy of inked fingerprint card of ten fingerprints he obtained from Hurst. Steward testified that he obtained a certified copy of a Judgment of Conviction on Hurst showing a prior conviction in July of 2019 for possession of a controlled substance, and that he had matched the fingerprints on the prior conviction to the fingerprints he obtained from Hurst in this matter.

According to Steward, when he was fingerprinting Hurst for the current charges, Steward noticed a tattoo on Hurst's hands. The defense objected to Steward testifying any further about the tattoo he saw on Hurst's hands, and at a bench conference the following exchange occurred:

> [Defense Attorney]: At this time -- same thing from yesterday regarding the hat -- we are talking about the same issue as yesterday. The defendant has tattooed across his four fingers on the first knuckle the word "boss" and I'm assuming that's where the State is headed to introduce that fact and we are objecting to that, one, as to relevance - - it's relevance that -- even if it is relevant, under 403, it's more prejudicial than probative.

> [State's Attorney]: Your Honor, it's relevant because it goes to and links to the possession of the controlled substance. As I stated with the previous objection with the previous issue, Defense counsel, in opening, was talking about proving possession of the controlled substance. So, this can be used to rebut the Defensive theory.
> Additionally, I think that it is more probative than prejudicial. I don't see how it is prejudicial. We are just asking to show a tattoo that will show the links from him to the controlled substance.

7

[Defense Attorney]: And to add to my objection, I would make an objection that they are asking the defendant to give testimony of evidence against himself, and he has not testified or agreed to be called as a witness. Therefore, they are asking him to give testimony against himself.

[State's Attorney]: I don't believe this is testimonial at all, Judge.

THE COURT: And is your pursuit of this information through Investigator Steward solely?

[State's Attorney]: Yes, Your Honor, because he did see the tattoo, and he noticed it.

[Defense Attorney]: That was not a voluntary procedure is what I'm getting to is the -- let's assume I had objected to the process. I can say that was testimonial -- the defendant has complied to the fingerprint processing, but he's gathering information outside of what he was charged with. Now, I would admit that the defendant has to submit himself to that process, but anything observed during that process I think is an interaction with law enforcement without counsel present. It's a --

THE COURT: I think it's a valid objection, and it's noted. I don't mind testimony of Investigator Steward of what he observed. I don't find that to be testimonial in nature as far as your client is concerned. I am wondering were the tattoos of Mr. Hurst documented in any other process such as booking information?

[State's Attorney]: Yes, Your Honor.

3. Other Evidence

The State also introduced without objection the video feeds from Duenas's dash camera and body camera, as well as the items seized during the stop. The lab report which was presented at trial and admitted into evidence without objection confirmed that the substances from inside the backpack were weighed, tested, and

8

found to contain methamphetamine. The weight was 999.76 grams, or nearly a kilogram. Duenas testified that he considered this amount too great for personal use, and according to Duenas, along with the scale and the baggies that he found inside the vehicle, Duenas believed the evidence indicated that Hurst intended to distribute the methamphetamine to others. The jury also heard evidence presented by the State that, based on a fingerprint comparison, Hurst was the same person convicted in a previous drug case and burglary case.

## Issues

On appeal, Hurst raises three issues. In his first issue he argues that the trial court erred in denying his motion to suppress the search of Hurst's vehicle by a law enforcement canine because the officer lacked reasonable suspicion to conduct the search. In his second issue, Hurst argues that the trial court erred in failing to give the jury a requested instruction under article 38.23 of the Texas Code of Criminal Procedure. And, in his third issue, Hurst contends the trial court erred in overruling Hurst's objection to State's Exhibit 32 because it was an unauthenticated photograph.

## Standard of Review

A. Denial of the Motion to Suppress

Generally, we review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App.

9

2013). We review the trial court's factual findings for an abuse of discretion and the trial court's application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Johnson v. State*, 871 S.W.2d 744, 748 (Tex. Crim. App. 1994) (en banc). Here, there was no hearing on the suppression motions, and the trial court did not make factual findings.

When the trial court does not conduct a hearing on a motion to suppress and does not enter findings of fact, we apply an abuse of discretion standard, and will overturn the trial court's ruling only if it acted "outside the zone of reasonable disagreement." *See Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021) (citations omitted) (discussing the application of the abuse of discretion standard in the absence of a hearing and factual findings).

> [W]e view the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. The party that prevailed in the trial court is afforded the strongest legitimate view of the evidence, and all reasonable inferences that may be drawn from that evidence.

*Id.* (citations omitted).

B. Denial of Requested Jury Instruction

Appellate review of a purported jury charge error involves a two-step process. *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011). First, we must determine whether error exists, and second, we must determine whether sufficient harm resulted from the error to warrant reversal. *See Kirsch*, 357 S.W.3d at 649 (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)); *see also Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If no error occurred, our analysis ends. *See Walker v. State*, 659 S.W.3d 43, 62 (Tex. App.—Beaumont 2022, pet. ref'd) (citing *Kirsch*, 357 S.W.3d at 649). Whether the error was preserved in the trial court determines the degree of harm required for reversal on appeal. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). If error was preserved by objection at trial, to obtain a reversal it requires a showing of "'some harm[.]'" *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) (quoting *Almanza*, 686 S.W.2d at 171). If the error was not preserved by objection at trial, to obtain a reversal it requires proof of fundamental harm that was "so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal*, 453 S.W.3d at 433.

In assessing the degree of harm, we must consider the entire jury charge, the evidence, the argument of counsel, and any other relevant information revealed by the record. *Almanza*, 686 S.W.2d at 171. We examine the charge in its entirety rather than a series of isolated statements. *Holley v. State*, 766 S.W.2d 254, 256 (Tex. Crim. App. 1989); *Iniguez v. State*, 835 S.W.2d 167, 170 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). "[E]gregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (internal quotations omitted). "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Id.* at 490.

C. Admissibility of Evidence

We apply an abuse of discretion standard of review of a trial court's ruling on the admission of evidence. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g); *Bisby v. State*, 907 S.W.2d 949, 952-53 (Tex. App.—Fort Worth 1995, pet. ref'd). A trial court's ruling on the admission of evidence will be overturned only if the ruling is so clearly wrong that it lies outside the zone of reasonable disagreement. *See Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

Analysis

A. Motion to Suppress

In the trial court, Hurst filed a pretrial Motion to Suppress in both cases, and therein he sought to suppress "[a]ny and all evidence obtained by the Officer or entity that was obtained in violation of the law[.]" There was no pretrial hearing or ruling on Hurst's motion in either case, and the two cases were tried together before a jury. On the second day of trial, after the State presented its witnesses and evidence and rested, and after the Defense attorney verbally sought a motion for directed verdict which was denied, the Defense then mentioned the suppression motions. When the trial court asked the Defense if there was "anything further," the attorney stated:

> [Defense Attorney]: Yes, ma'am. Two things: One, it's the Defense's intent to at this point to rest. We have been carrying a motion to suppress with the trial. So, two points on that. We are challenging the search and the seizure of the alleged controlled substances, as well as the gun. First is the motion to suppress, and the next step is – should the Defense fail on that point is whether or not the Defense would be granted a 38.23 instruction. So, while we are here outside the presence, I think it's a good time to discuss those issues now.
>
> [State's Attorney]: Your Honor, if Defense counsel could clarify, the motion to suppress and the search and seizure as to the reason why --
>
> [Defense Attorney]: The motion to suppress filed is for a general form, but specifically as far as the reason we are challenging the seizure of the evidence is simply that this search was illegal. We know it wasn't base[d] on a search warrant, do not have any exceptions to that such as consent or inventory or probable cause or any of those noted exceptions to the search warrant requirement. When we get down to it, a very finite

13

law -- the search by the drug detection dog, there is a recent body of law. It all revolves around a Supreme Court case *Rodriguez v. State*. Let me find a [c]ite for you. 575 U.S. 348, 2015 case. I have printed out and provided the State with copies of, one, the *Rodriguez* decision; two, case entitled *Ramirez-Tamayo v. State* which is a Texas case in 2017, and then a -- I don't know what publication this is, but it's a treatment of the issue of dog searches.

By the time the defense raised the motion to suppress at trial, Duenas had already testified about the guns and drugs found during the search of the vehicle. Hurst argues on appeal that there was an illegal search and seizure of the guns and drugs because there was no search warrant or probable cause.

Hurst contends on appeal that the search was improper, and the seizure of the guns and drugs violated his constitutional rights. To preserve this complaint for appellate review, "the record must show that [Hurst] made a timely request, objection, or motion, and that the trial court ruled on it." *Garza v. State*, 126 S.W.3d 79, 81-82 (Tex. Crim. App. 2004); *see also* Tex. R. App. P. 33.1(a). Although Hurst did file a timely pretrial motion to suppress in his cases, the trial court did not rule on Hurst's motions until the second day of trial, after Duenas had already testified about the search and seizure and the seized evidence, and Hurst did not lodge any objections pertaining to the legality of the search or seizure when the evidence was being offered during trial. Based on the record in this case, Hurst failed to preserve error because he did not contemporaneously object to the evidence and testimony when it was offered at trial, and his pretrial motions to suppress that he "carried"

14

with his cases did not preserve his complaint. *See Gonzalez v. State*, 563 S.W.3d 316, 321-22 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (when a motion to suppress is carried with the trial, the defendant must object each time evidence is offered in order to preserve error); *see also Trung The Luu v. State*, 440 S.W.3d 123, 127 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (when the trial court did not have a pretrial hearing and make a ruling on the motion to suppress before trial, the defendant must make a timely objection to the evidence when it is offered at trial in order to preserve error).

Although Hurst may have been "carrying his motions" with the trial, there is nothing in our record to demonstrate the trial court held a pretrial hearing or that it made a ruling prior to trial on the motions. Hurst should have objected to the search and seizure and the evidence being offered at trial each time the testimony and evidence was offered and before it was introduced to the jury. *Gonzalez*, 563 at 321-22. There is nothing in our record to show that the trial court directed Hurst to postpone seeking a ruling on these motions or that the trial court otherwise agreed to allow the evidence to be presented at trial before she would rule on the motions. *Gonzalez*, 563 S.W.3d at 321; *cf. Garza*, 126 S.W.3d at 84-85 (error was preserved despite a failure to obtain a ruling at the earliest opportunity because the record demonstrated that the trial court directed appellant to wait until all the evidence was

presented). Here, Hurst's pretrial motions to suppress did not preserve his complaints. *See Gonzalez*, 563 S.W.3d at 321; *Trung*, 440 S.W.3d at 127.

That said, even if the pretrial motions to suppress had preserved his complaint, we conclude the trial court did not err in denying the suppression motions. Duenas made an investigative traffic stop based upon the obscured license plate, which is a violation of a traffic law. *See* Tex. Transp. Code Ann. § 504.945(a)(7) (obscured license plate). The trial court reasonably could have concluded that Duenas did not prolong Hurst's traffic stop to conduct a canine sniff of the perimeter of the vehicle by his dog, Kodiak. Kodiak was with Duenas at the scene when he conducted the stop, so the officer did not have to wait for the dog to be brought to the scene of the traffic stop. Further, the testimony established that the law enforcement officer had developed reasonable suspicion to conduct the canine sniff because the officer observed Hurst look back and then move something from the front seat to the back seat inside the vehicle, Hurst was already turned looking back as Duenas approached the vehicle, Hurst was "really uncomfortable" and shaking excessively while speaking with Duenas, Hurst hesitated in answering direct questions, and when Hurst emptied his pockets the officer discovered over $1,000 in cash in differing denominations, which Duenas testified was suspicious of involvement in criminal drug activity.

16

Hurst argues that this case is like *Rodriguez v. United States*, 575 U.S. 348 (2015). In *Rodriguez*, after the arresting officer gave the driver a traffic warning, the officer then continued to detain the defendant until a drug dog could be brought to the scene, and then the officer and the dog conducted a sniff of the vehicle several minutes later. *Id.* at 351-52. Unlike *Rodriquez*, here the drug dog was already at the scene and with Duenas. So, Hurst was not required to wait for a dog to be brought to the scene.

Based on the record, we conclude that the trial court did not err in denying the motions to suppress. *See Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35-36 (Tex. Crim. App. 2017). Duenas initiated the stop at 7:04 p.m., and Hurst stopped at 7:06 p.m. The body camera recording shows that Duenas then questioned Hurst for only a short time before deploying Kodiak at 7:15 p.m. Kodiak alerted at 7:17 p.m., eleven minutes after Hurst was stopped. While it is true that "[a] seizure justified only by a traffic violation becomes unlawful if prolonged beyond the time reasonably required to conduct the traffic stop[,]" once the officer develops reasonable suspicion of criminal activity apart from the traffic stop, the officer may continue to investigate and detain the suspect. *Ramirez-Tamayo,* 537 S.W.3d at 36. "'Reasonable suspicion to detain a person exists when a police officer has 'specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged

17

in criminal activity.'" *Id.* (quoting *Furr v. State*, 499 S.W.3d 872, 878 (Tex. Crim. App. 2016)). This is "'an objective standard that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention.'" *Id.* (quoting *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013)). In assessing whether reasonable suspicion exists, a reviewing court may take into account an officer's ability to "'draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that 'might well elude an untrained person.'" *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Cortez*, 449 U.S. 411, 418 (1981)). A reviewing court must give "'due weight'" to factual inferences drawn by local judges and law enforcement officers. *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

Even if the traffic stop here was initially only for an obscured license plate, Duenas testified about why he had a "reasonable suspicion of criminal activity" that justified further investigation and deploying Kodiak to conduct a drug sniff. *See Rodriguez*, 575 U.S. at 358. As explained by the Court of Criminal Appeals in *Ramirez-Tamayo*, an appellate court should "defer to the trial court's implied finding that the deputy was credible and reliable with respect to his training and experience that would enable him to reasonably suspect that appellant may have been in possession of illegal drugs." *See* 537 S.W.3d at 37. We defer to the trial court's

18

implied findings that Duenas was credible and reliable, that he had received training in suspicious behavior of those in possession of illegal drugs, and that his training and experience enabled him to determine further investigation was warranted for deployment of the drug dog, and that then led to an alert and search of the vehicle. We disagree with Hurst that Duenas had only a mere "inchoate and unparticularized suspicion or hunch." We conclude based on the record that Duenas articulated "specific, objective observations about [Hurst's] particular behavior and why it was suggestive of drug activity[.]" *Id*. at 38. Therefore, even if Duenas had prolonged Hurst's detention to deploy a drug dog, it was reasonable for him to do so under the circumstances and facts presented. *Id*. at 39. We overrule Hurst's first issue.

B.  Denial of Requested Jury Instruction

In his second issue, Hurst complains about the trial court's failure to give the jury his requested jury instruction. Article 36.15 of the Texas Code of Criminal Procedure permits counsel for both the State and the defense "a reasonable time to present written instructions and ask that they be given to the jury." Tex. Code Crim. Proc. Ann. art. 36.15. Any requested instructions must be raised by the evidence to be properly included in the jury charge. *See Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007) ("To raise a disputed fact issue warranting an Article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question.").

19

Hurst requested an instruction, which he described at trial as an instruction to the jury to disregard any evidence it believed was illegally obtained.[1] *See* Tex. Code Crim. Proc. Ann. art. 38.23(a). Hurst did not explain at trial what fact pertaining to the stop or the search and seizure he disputed. The trial court denied the instruction. Hurst contends on appeal that the trial court erred because "in the alternative, the issue of whether Officer Duenas had reasonable suspicion to search the vehicle should have been submitted to the jury in an Article 38.23 instruction, which was denied by the trial court."

Hurst's "right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or

---

[1] The proposed instruction reads as follows:

> You are instructed that under our law no evidence obtained or derived by an officer or other person as a result of an unlawful search shall be admissible in evidence against such accused. An officer is permitted to make a temporary investigative detention of a motorist if the officers have specific articulable facts, which, taken together with rational inferences from those facts, lead them to conclude that a person detained actually is, has been, or soon will be engaged in criminal activity. Now, bearing in mind if you find from the evidence that on the occasion in question the Defendant, AB, was driving his vehicle in a single marked lane on a public road immediately preceding his stop and detention by the officers herein or you have a reasonable doubt thereof, then such stopping of the accused would be illegal and, if you find the facts so to be, or if you have a reasonable doubt thereof, you will disregard this testimony of the officers relative to their stopping the Defendant and their conclusions drawn as a result thereof and you will not consider such evidence for any purpose whatsoever.

statutory violation that would render evidence inadmissible." *Madden*, 242 S.W.3d at 509-10. Such an instruction is "mandatory *only* if there is a factual dispute regarding how the evidence was obtained." *Chambers v. State*, 663 S.W.3d 1, 4 (Tex. Crim. App. 2022) (citation omitted) (emphasis added).

There are three predicates required for a defendant to be entitled to an article 38.23 jury instruction: "(1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the challenged conduct." *See Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). So, Hurst had to affirmatively contest or raise a "disputed fact issue" warranting the instruction. *Id.* at 306-307 (discussing what is required to establish a "disputed fact issue" in the context of being entitled to a requested article 38.23 jury instruction in a similar factual situation). Here, Hurst did not dispute the fact that the license plate was obscured, which initially prompted the stop, nor did he challenge what the deputy constable saw or how Hurst behaved during the stop. Hurst did not dispute what the dashcam video depicts, that Hurst was carrying a large amount of cash in various denominations, or that the drug dog alerted.

On the record before us, we cannot conclude that the trial court erred by determining that there was no affirmative evidence that put the existence of a material fact into question and in denying the request for an article 38.23 jury

21

instruction. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a); *Hamal*, 390 S.W.3d at 306-07; *Madden*, 242 S.W.3d at 513. We overrule issue four. We need not reach the question of harm. *See Kirsch*, 357 S.W.3d at 649. We overrule Hurst's second appellate issue.

## C. Admission of Evidence

In his third and final issue, Hurst contends that the trial court abused its discretion by admitting State's Exhibit 32 to link Hurst to the backpack containing the methamphetamine. Hurst contends the exhibit was improperly authenticated, and the trial court therefore erred by admitting it.

State's Exhibit 32 is a printout of a photograph taken from Hurst's Facebook account. The photograph shows a cap bearing the word "BO$$," and is captioned "IM A BIG BOSS CAUSE I SAY SO[.]" The lettering on the cap is virtually identical to the lettering on a patch Duenas found in the backpack containing the methamphetamine.

Hurst acknowledges that authentication requires only that the party offering the evidence can show that it "is what the proponent claims it is." *See* Tex. R. Evid. 901(a). He claims that the State did not meet that burden because there was no testimony or evidence admitted at trial that Appellant made the alleged Facebook post, there was no testimony or evidence admitted at trial that Appellant took the

22

photo contained in the alleged Facebook post, and there was no testimony or evidence admitted at trial that Appellant "owned a Facebook account to post from."

Texas Rule of Evidence 901 governs the authentication requirement for the admissibility of evidence. Rule 901(a) provides:

> (a)    In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

Tex. R. Evid. 901(a); *see also Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). The authentication of evidence requires the proponent of the evidence to make a threshold showing that the evidence is what the proponent claims it to be. *See Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). The threshold can be met by circumstantial evidence. *Id*. And, it has been described as a "'liberal standard of admissibility.'" *Fowler*, 544 S.W.3d at 849 (citations omitted). The trial court need only make the preliminary determination that the proponent of the evidence has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic. *Id*. Then it is up to the jury to make the final determination of whether the evidence is what the proponent claims it to be. *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015).

In the instant case, the State offered evidence that the Facebook account reflects Hurst's name, that the Facebook page had several photographs of Hurst, that it showed a location that matched Hurst's city, that the law enforcement officer had

personally searched on Facebook and found the post which he believed matched Hurst's name and appeared to match Hurst, and further it contained references to Hurst as "Boss." The trial court ruled that the exhibit had been sufficiently authenticated, and that it would be admitted. Upon admission of the evidence, the jury then made the final determination as to whether the item was what the State proposed. *See id.*

On this record, we cannot say that the trial court's evidentiary ruling was outside "the zone of reasonable disagreement," and we conclude the trial court did not abuse its discretion in overruling the defendant's authentication objection. *See* Taylor, 268 S.W.3d at 579. We overrule Hurst's final appellate point.

Having overruled all of Hurst's issues, we affirm the judgment of conviction in both cases.

AFFIRMED.


LEANNE JOHNSON
Justice

Submitted on June 7, 2023
Opinion Delivered December 6, 2023
Do Not Publish

Before Horton, Johnson and Wright, JJ.

24